Stokes *v.* American Central Ins. Co.

Division A.   May 7, 1951.

No. 37951  (52 So. (2d) 358)

Quitman Ross and Grover C. Doggette, for appellant.

Denton Gibbes, Jr., Beard, Pack & Ratcliff and Welch, Cooper & Welch, for appellee.

Lee, J.

This was a suit by C. M. Stokes to recover from American Central Insurance Company on a fire insurance policy which covered household effects and personal property. The cause was transferred from the circuit to the chancery

court. The pleadings were recast, and after the hearing, the original bill was dismissed, and the prayer of the cross bill was granted. Stokes appeals.

C. M. Stokes and Mrs. Doxie Stokes had been married about twelve years. They jointly owned a home in the City of Laurel, where they lived with an only daughter. On April 6, 1944, Stokes procured from the insurance company a fire policy on the household furnishings and personal property in the home to run for a period of three years. Shortly thereafter, he and his wife separated. On September 8th following, there was an agreed decree which provided for separate maintenance, custody of the child, and for Stokes to convey his one-half interest in the home to his daughter. He then moved out, taking only his personal effects. Later, on February 8, 1945, Mrs. Stokes obtained a divorce. On November 20, 1946, the home was destroyed by fire; and about two weeks later the insurance company paid the full amount of the insurance to Mrs. Stokes. About two years later, Stokes brought this suit to recover the face of the policy in his own right.

The sole question for determination was whether or not Stokes authorized the transfer of the policy to Mrs. Stokes and thus justified the insurance company in making payment to her.

Stokes testified that the policy of insurance was left in the home, and that Mrs. Stokes refused to turn it over to him. After the divorce, he talked to her over the telephone and she still refused to let him have it. He disclaimed any conversation about it with the agent of the insurance company prior to the fire. He did talk to the agent several days after the fire and was told that the matter had been taken care of by payment to Mrs. Stokes. His excuse for failure to report the loss and make a claim was that he did not have the policy. He neither assigned the policy to Mrs. Stokes nor authorized anyone else to do so; and did not consent to payment of the money to her.

Mrs. Stokes testified that, at the time of the separation, the policy was in the hands of Stokes. He brought it by the house one afternoon while she was away, and left it on the desk because he rightfully knew it was hers. He had never tried to get her to give it up. On the day after the fire, she asked him to pay a balance on the premium so that she could collect the insurance money and rebuild. His reply was that she was getting the insurance and she should pay the premium herself.

The insurance agent testified that Mrs. Stokes requested a transfer of the policy to her. Pursuant thereto, he told Stokes about the request, and "asked him if that was the way he wanted it, if that was all right to do." Stokes "told me to go ahead and transfer it, that he was glad to get out of that mess down there." Shortly thereafter he made the transfer. This was months prior to the fire. After the fire and before any payment, there was another conversation with Stokes about a slight balance in his insurance account. At that time, Stokes said: "You ought to collect that out of Mrs. Stokes. She is going to get the proceeds of this policy when the loss is paid."

On this sharp dispute, the court expressly found as a fact that Mrs. Stokes requested the insurance agent to change the policy so as to make the loss, if any, payable to her; that Stokes authorized the change; and that the change was made.

Such finding is amply borne out by the evidence. The testimony for the appellee, if believed, showed clearly that, at the time of the separation, Stokes had the policy in his possesion, and delivered it to Mrs. Stokes. She then requested the agent to transfer it to her. When the agent sought permission to do this, Stokes authorized it. Under such circumstances, Stokes consented to the transfer. The appellee, relying on Stokes' representation that the transfer had his approval, paid the face of the policy. To permit him now to recover this amount from the appellee would be contrary to equity and good morals. Stokes, if he expected to claim the loss in case of a fire,

ought to have retained the policy and should have refused the transfer. By his acts and conduct, he induced the appellee to pay this substantial sum of money to another. He cannot now collect a like sum himself. He is estopped from so doing.

In 19 Am. Jur., Estoppel, Sec. 42, p. 641, it is said: ██ ██ "Estoppel of this character arises from the conduct of a party, using the word 'conduct' in its broadest meaning as including his spoken words, his positive acts, and his silence when there is a duty to speak, and proceeds on the consideration that the author of a misfortune shall not himself escape the consequences and cast the burden on another. ██ ██ Accordingly, it holds a person to a representation made or a position assumed where otherwise inequitable consequences would result to another who, having the right to do so, under all the circumstances of the case, has in good faith relied thereon and been misled to his injury." Of like effect is 31 C. J. S., Estoppel, Sec. 59, page 236. Cf. Kelso v. Robinson, 172 Miss. 828, 161 So. 135, 137, where it is said that this ██ ██ "doctrine lies at the foundation of morals; it is based on equity and good conscience." See also Martin v. Hartley, 208 Miss. 112, 43 So. (2d) 875. The two positions taken by Stokes are likewise inconsistent. 19 Am. Jur., Estoppel, Sec. 50, p. 650.

██ ██ There was a clause in the policy that "assignment of this policy shall not be valid except with the written consent of this company." It is contended that the endorsement thereon, "this policy is hereby assigned to Mrs. Doxie Stokes," was not signed by the company. But the agent of the company actually wrote this endorsement. Besides, ██ ██ "Provisions of an insurance policy requiring an assignment thereof are solely for the benefit of the insurer, who alone can take advantage of the want of a writing, and do not affect the validity of the assignment as between the insured and the assignee." 29 Am. Jur., Insurance, Sec. 509, p. 412.

■■ It is also said that the transfer was without consideration. The daughter, to whom Stokes had deeded his one-half interest, and her mother lived in the home with all of their personal effects. If he delivered the policy, as testified about, evidently his intention was to make it a gift. Of course, the assignment of a policy may effect that purpose. 29 Am. Jur., Insurance, Sec. 508, p. 411.

Affirmed.