HARTFORD ACCIDENT & INDEMNITY COMPANY *v.* LOCKARD

No. 41564     December 5, 1960     124 So. 2d 849

*P. D. Greaves,* Gulfport, for appellant.

*Merle F. Palmer*, Pascagoula, for appellee.

KYLE, J.

The appellee, Jacob T. Lockard, instituted this suit in the Chancery Court of Jackson County against the appellant, Hartford Accident and Indemnity Company, seeking to recover sums of money which the appellee

had become legally obligated to pay to third persons as damages because of bodily injuries and property damage caused by accident and arising out of the ownership and use by the appellee of a motor vehicle, for which coverage was claimed under an automobile liability policy issued by the appellant; and from a decree overruling a demurrer to the bill of complaint and awarding to the appellee a money judgment the appellant has prosecuted this appeal.

The bill of complaint in this case was filed by the said Jacob T. Lockard, complainant, against the said Hartford Accident and Indemnity Company, defendant, on January 26, 1959. In his bill the complainant alleged that on May 28, 1956, he was the owner of a 1953 Ford F-600 truck, which was being driven by Roosevelt Tanner, an employee of the complainant, north on Highway 59, about one mile south of Vancleave, Mississippi, and was pulling a bobtail log trailer owned by the complainant, when said trailer came loose and ran into a 1952 two-ton Chevrolet truck which was owned and was being driven by Gaston Fairley, who had a passenger, Manson Littlefield, with him in the truck; that the loose trailer struck the truck of Gaston Fairley and damaged same, and that Fairley and Littlefield sustained personal injuries as a result of the collision.

The complainant further alleged that at the time of the accident he carried liability insurance with the defendant, Hartford Accident and Indemnity Company, on said 1953 Ford truck, under Policy No. 20K 117229, issued by the said defendant; that the complainant immediately gave notice of said accident to Moran's Insurance Agency at Ocean Springs, Mississippi, who was the general agent of the defendant herein; and complainant was assured by Moran's Insurance Agency that he was fully covered under the policy and the defendant would take over the investigation and defense of any claims against the complainant as a result of said accident; that the defendant proceeded to investigate the

accident, and had the truck of Gaston Fairley taken to a garage in Biloxi, Mississippi, for repairs; that in the meantime the said Gaston Fairley and Manson Littlefield employed an attorney to represent them in actions against the complainant for personal injuries and property damage arising out of said accident; that the said attorney notified the complainant in writing of his representation of Failey and Littlefield in the matter; that the complainant forwarded said letter to the defendant; and that on July 3, 1956, C. B. Corban, a duly authorized representative of the defendant, wrote the attorney for said Fairley and Littlefield a letter in which the defendant's representative stated: ''We carry Mr. Lockard's insurance and your letter was forwarded on for my attention. I will be in touch with you within the next few days to discuss this matter with you.'' The complainant further alleged that the said C. B. Corbin contacted both Fairley and Littlefield and assured them that the matter would be settled by the defendant, and the complainant, acting under the assurance that he was fully covered, made no effort to investigate the claims of the said Fairley and Littlefield or negotiate a settlement of said claims. The complainant further alleged that the complainant had no notice from the defendant that he was not fully covered under the liability policy, until September 26, 1956, when the complainant received a letter from Moran's Insurance Agency enclosing a letter which the defendant had written to Moran's Insurance Agency, dated September 24, 1956, in which the defendant denied coverage under said policy. Copies of said letters were attached as exhibits to the bill of complaint and made a part thereof.

The complainant further alleged that a few days after the complainant received the above mentioned letter dated September 24, 1956, in which the defendant denied coverage under said policy, Gaston Fairley and Manson Littlefield filed suits in the Circuit Court of Jackson County against the complainant for personal injuries

and property damage, and process was served on the complainant in each of said cases on October 5, 1956, returnable to the November 1956 term of said court; that both suits came within the protection of the policy of insurance issued to the complainant by the defendant, and that it was the duty of the defendant to defend the complainant in both cases or make settlement of same; that notwithstanding such duty to defend said suits, after leaving the complainant in a position of false security for a period of almost four months, the defendant advised the complainant that, although the defendant had the insurance coverage on the truck, there was no coverage on the trailer, and since the trailer had caused the damage and injuries complained of the defendant owed the complainant no duty to settle or defend said suits. The complainant further alleged that the amount demanded by Fairley in the declaration filed by him was $13,609 and the amount demanded by Littlefield in his suit was $15,248.70; that as a result of the defendant's refusal to defend said suits, the complainant was forced to employe an attorney to defend said suits, and that he employed an attorney at Pascagoula to defend said suits and paid him a fee of $500 for his services; that because of the serious injuries involved in the suits filed against the complainant and the prejudicial position in which he had been placed as a result of the defendant's action in failing to notify the complainant promptly that there was no coverage on the trailer and the defendant would not defend said suits, the complainant was compelled to settle the two cases by paying to Fairley the sum of $1,617.50 and to Littlefield the sum of $2,208.70.

The complainant further alleged that "at the time the insurance policy here in question was issued he was assured and advised by the defendant, acting through its duly authorized agent, that said policy covered his trailers that would be attached to the trucks under the policy," and that the letter of Moran's Insurance Agency

dated September 26, 1956, was the first notice that he had that the defendant was denying coverage of the accident under the policy; that the complainant had made no effort to investigate the accident, or contact witnesses, or secure medical reports during the four month period which had intervened since the date of the accident; and that the defendant's actions during said four month period, as set forth above, had greatly prejudiced the position of the complainant; and the defendant was estopped to deny coverage of said accident. The complainant attached to his bill of complaint copies of the declarations filed in the two suits mentioned above as exhibits to said bill of complaint.

The complainant prayed that on the final hearing of the cause the court decree that the actions of the defendant, as set forth above, were such as to estop the defendant from denying coverage of said accident under said liability policy, or in the alternative that the court decree that the actions of the defendant constituted negligence, and that damages be awarded to the complainant in such amount as might be shown by the evidence to be due him for money expended by the complainant for the settlement of said claims of Fairley and Littlefield, and that the court grant such other relief as the court might deem proper.

The defendant filed a general demurrer to the bill of complaint, and assigned as ground for demurrer that there was no equity on the face of the bill. The chancellor overruled the demurrer. The defendant then filed its answer to which there was attached a copy of the liability insurance policy sued on, but the answer was later withdrawn and the defendant declined to plead further. A final decree was then entered overruling the defendant's general demurrer and awarding judgment in favor of the complainant for the sum of $4,326.20, together with all costs.

The policy of insurance, upon which the plaintiff's action is based, and which has been made a part of the

record on this appeal, provided that the insurer agreed with the insured, "in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy," as follows:

## "INSURING AGREEMENTS

"I. *Coverage A—Bodily Injury Liability*: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.
" * * *

"*Coverage C—Property Damage Liability*: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile.

"II. *Defense, Settlement, Supplementary Payments*: With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *."

Under the heading "EXCLUSIONS", the policy expressly provided as follows:

"*This policy does not apply*:
" * * *

"(c) under coverages A and C, while the automobile is used for the towing of any trailer owned or hired

by the insured and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company;
" * * * "

On the Declarations page of the policy, the description of the automobile covered is as follows: "53 Ford F600 Cab & Chas. F6OR-3M16375, Classification CA-4." The occupation of the named insured is listed as "Pulpwood hauling." The purpose for which the automobile is to be used is "Commercial." Under the heading "CONDITIONS", the policy provided as follows:

"19. *Declarations.* By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

The appellant has assigned and argued only one point as ground for reversal of the decree of the lower court, and that is that the court erred in overruling the defendant's general demurrer. It is contended that the policy of insurance under which the appellee seeks to recover did not insure the appellee's trailer which was involved in the accident referred to in the bill of complaint, or the vehicle described in the policy while being used to pull a trailer, but instead, specifically excluded coverage while the vehicle was being used in the manner and for the purpose for which it was being used at the time of the accident; and the appellant's attorney says that under the facts alleged in the bill of complaint, there is no room for the application of the doctrine of waiver or equitable estoppel.

It is first contended on behalf of the appellee that both the truck and the trailer were covered under the liability policy, and that the trailer referred to in the exclusion clause of the policy meant a trailer designed

for use with a private passenger automobile, and had no reference to a trailer used for commercial purposes only. It is next contended that the appellant's general agent, Moran's Insurance Agency, knew that the truck was to be used for pulpwood hauling, and that the appellant was therefore estopped to deny that the policy covered both truck and trailer; that, from the facts pleaded, it clearly appears that the intention of the parties, at the time the contract of insurance was entered into, was that the contract should cover the vehicle described therein and the trailer attached thereto. And finally, it is argued on behalf of the appellee that, if the court should hold that the appellee was not entitled to recover on the insurance contract itself, since the appellant had taken over the complete control of the investigation and negotiations for settlement of the claims and demands being made against the appellee, the appellant was under a duty to continue with the defense and was estopped to deny liability under the policy four months after the date of the accident.

We think the chancellor erred in overruling the appellant's general demurrer. The contract of insurance is clear and unambiguous. The motor vehicle covered was particularly described in the policy. The trailer was not mentioned in the policy; and it was expressly provided that the policy did not apply under coverages A and C, while the automobile was being used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company.

This case, in our opinion, is controlled by the decision rendered by the Court in Maryland Casualty Company v. Adams, 159 Miss. 88, 131 So. 544, in which the Court held that a waiver by the insurer growing out of an agent's acts cannot be relied on so as to extend the indemnity of an insurance contract to cover a vehicle not specifically covered by the policy. The policy involved in that case contained an express condition that no vehicle covered thereby should be used for towing or pro-

pelling any trailer or any vehicle used as a trailer, and expressly provided further that the policy did not cover a motor vehicle therein described while being used for towing or for propelling any trailer or any vehicle used as a trailer. In overruling the demurrer in that case the lower court held that there was a waiver of the provisions of the policy forbidding the use of a trailer in connection with the truck covered by and described in the policy. On appeal this Court reversed the judgment of the lower court, and in its opinion said:

"The contract of insurance here sued on particularly described the motor vehicle covered thereby, and contained the express condition that no automobile covered thereby should be used for towing or propelling any trailer or any vehicle used as a trailer, and expressly provided that the policy of insurance did not cover the automobile therein described while being used for towing or propelling any trailer or any vehicle used as a trailer, and by means of an asserted waiver it is now attempted to write a new contract between the parties and extend the indemnity of the contract to cover a vehicle not covered by the original contract. There is not here involved merely a forfeiture condition or provision of the policy contract, which it is sought to avoid by reason of the acts of an agent of the insurance company constituting a waiver thereof, but it here sought to make, by waiver, a contract for the parties which they never made themselves, and by waiver to extend the contract to cover vehicles not covered thereby, and which the insurance company expressly refused to insure, and this result cannot be accomplished by means of any alleged waiver growing out of the acts of the agent of the company. Massie v. Washington Fidelity National Insurance Co., 153 Miss. 436, 121 So. 125."

From the opinion rendered in the Adams Case, it appears that the bill of complaint in that case, as in this case, alleged that the agent who issued the policy was a general agent, and that "said general agent" knew

that the policy was called for and issued to protect the insured against damages for injuries to third persons in the operation of his truck and trailer. It also appears that the bill of complaint in that case alleged that "said policy was issued and delivered to him (the insured) as aforesaid without giving him an opportunity to read it, and upon the assurance to him by the said agent that it would protect him against loss and damage growing out of any accident or injuries to third persons, whatever * * *."

The decision rendered by this Court in the Adams case was reaffirmed by the Court in Adams et al. v. Maryland Casualty Company, 162 Miss. 237, 139 So. 453.

In discussing the matters as to which waiver or estoppel may be asserted in cases of this kind, the text-writer in 45 C.J.S., p. 616, Insurance, par. 674a, says:

"As a general rule, the doctrines of waiver or estoppel can have a field of operation only when the subject matter is within the terms of the contract, and they cannot operate radically to change the terms of the policy so as to cover additional subject matter. Accordingly, it has been held by the weight of authority that waiver or estoppel cannot create a contract of insurance or so apply as to bring within the coverage of the policy property, or a loss or risk, which by the terms of the policy is expressly excepted or otherwise excluded. As has sometimes been said, the doctrines of waiver or estoppel cannot be successfully invoked to create a primary liability, or a liability for a benefit not contracted for at all, or to supply a failure of proof that a loss was covered by the policy."

The rule thus stated has been applied by the courts under varying circumstances and different factual situations in the following cases: Lumber Underwriters of New York v. Rife, 1915, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140; C. E. Carnes & Co. v. Employers' Liability Assurance Corporation (C.C.A. 5th, 1939), 101 F. 2d

739; Standard Accident Ins. Co. v. Roberts (C.C.A. 8th, 1942), 132 F. 2d 794; United Pac. Ins. Co. v. Northwestern Nat. Ins. Co. (C.C.A. 10th, 1950), 185 F. 2d 443; Patterson v. Woodmen of the World Life Ins. Soc., (Ala. 1955), 84 So. 2d 127; Conner v. Union Automobile Ins. Co. (Cal. 1932), 9 P. 2d 863; Hartford Fire Ins. Co. v. Smith, 1940, 200 Ark. 508, 139 S. W. 2d 411.

In the case of C. E. Carnes & Co. v. Employers' Liability Assurance Corporation, supra, the Court held that the coverage on an automobile liability policy, as to personal injury and property damage covering a truck used for the transportation of materials and uses incidental thereto in connection with the insured's business of handling farm machinery and plumbing equipment, did not extend to the truck while used in transporting butane gas, and that knowledge of the agent of the insurer under such policy when the policy was renewed that the truck was used to haul butane gas could not bind the insurer so as to extend the coverage of the policy to such use of the truck. In its opinion in that case the court said:

"It is well settled that conditions going to the coverage or scope of a policy of insurance as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action. The rule is that while an insurer may be estopped by its conduct or its knowledge from insisting upon a forfeiture of a policy, the coverage or restrictions on the coverage cannot be extended by the doctrine of waiver or estoppel. The substance of the doctrine of waiver as applied in the law of insurance is that if the insurer with knowledge of facts which would bar an existing primary liability recognizes such primary liability by treating the policy as in force, he will not thereafter be allowed to plead such facts to avoid his primary liability.

"This is a case where the coverage is sought to be extended. The doctrine of waiver cannot be invoked to create a primary liability, and bring within the coverage

of the policy risks not included or contemplated by its terms. Estoppel through the knowledge of Guy L. White, the agent of the insurance company, could operate in favor of the insured, Carnes & Company, only to relieve as against the consequences of violation of the terms of the policy and not to extend coverage. H. D. Foote Lumber Co., Inc., et al. v. Svea Fire & Life Ins. Co., 179 La. 779, 155 So. 22; Annotation, 113 A.L.R. 857-871.''

In the case of Waddey v. Maryland Casualty Co., (1937), 171 Tenn. 100 S.W. 2d 984, 109 A.L.R. 654, the Court held that the provisions of an automobile liability or indemnity policy to the effect that the policy did not cover the automobile described therein while being used for propelling any trailer or any vehicle used as a trailer, applied so as to negative liability where the insured permitted boys to attach to the car a homemade wagon constructed from the frame of a small buggy and equipped with four old T-Model Ford wheels with no tires, the accident having happened when the insured, on reaching the top of a hill, instead of stopping the car, continued to drive downgrade as a consequence of which the boy who was riding in the wagon lost control thereof and crashed into a telegraph pole. The Court in its opinion in that case said:

''The use of a trailer is an additional hazard, and for this reason an extra premium is charged for the privilege of its use. In Berry on Automobiles, Vol. 6, p. 690, it is said: 'An attachment of a trailer to an automobile is an added hazard justifying an insurance company in limiting its liability to the operation of the insured automobile free from the use of an attached automobile.'

''The policy here sued on expressly provides that it does not cover the automobile described while being used for purposes other than those specified in the Statements, or while being used for towing or propelling any trailer or any vehicle used as a trailer. During the period

the Waddey vehicle was attached as a trailer, the automobile was not covered by the policy.''

The appellee cites in support of his contention that the appellant is estopped to deny coverage on the trailer and the tractor while pulling the trailer the case of Calvert Fire Insurance Company v. Swain, 224 Miss. 85, 79 So. 2d 537, in which the court held that the knowledge of the insurer's agent that the truck in that case was being used on regular 80-mile runs between two designated towns would be imputed to the insurance company, and that the company was estopped to plead a violation of a 50-mile limitation of use endorsement contained in the policy. But the decision of the court in that case is not controlling here, for the reason that the limitation of use endorsement in the policy was entirely different from the exclusions provisions of the policy which we have before us in this case. No attempt was made in that case to extend the coverage of the policy to a vehicle expressly excluded from the coverage by the terms of the policy.

In its letter dated September 24, 1956, denying coverage on the policy sued on in this case, a copy of which was attached as an exhibit to the appellee's bill of complaint, the appellant stated: ''Our investigation discloses that Mr. Lockard owned at least three log trailers and that he had at no time elected to insure any of them.'' After a careful examination of the bill of complaint and the exhibits attached thereto, it seems clear to us that the doctrine of waiver or estoppel cannot be invoked in this case to extend coverage of the liability policy sued on to a vehicle which was not included in the policy, or to bring within the coverage of the policy a risk which was expressly excluded by the terms of the policy. We also think there is no merit in the appellee's contention that the provisions of paragraph (c) of the exclusions section of the policy are applicable only in cases where the insured motor vehicle

is used for the towing of "a trailer designed for use with a private passenger automobile."

We are also of the opinion that under the facts alleged in the bill of complaint the appellant was not estopped to deny coverage under the policy because of the alleged action of the appellant's claim agent in having the Fairley truck taken to a garage for repairs before completing his investigation of the accident. The mere fact that the appellant's claim agent at the beginning of his investigation had the truck of Gaston Fairley taken to a garage for repairs, under the mistaken belief that the damage to the truck was covered by the liability policy, did not prejudice the rights of the appellee under the policy or estop the appellant from asserting its right to deny liability under the policy after its investigation had been completed. Conner v. Union Automobile Ins. Co. (Cal. 1932), 9 P. 2d 863.

Finally, it is argued on behalf of the appellee that since the appellant had taken over the investigation of the accident, without giving notice of a reservation of its right to deny coverage, and had permitted four months to pass before notifying the appellee that the claims of Fairley and Littlefield were not covered under the policy, the court should hold that appellant was estopped to deny coverage under the policy.

But we think the facts stated in the appellee's bill of complaint were insufficient to create an estoppel by conduct, which would render the insurer liable to the insured for its refusal to defend the suits. "In order to create an estoppel in pais the party pleading it must have been misled to his injury, or the party pleading it must have been misled to his hurt or prejudice, * * * by the conduct or representations of another on which he relied and by which he was influenced and induced to act, or to refrain from acting, or to change his position; that is, he must have suffered a loss of a substantial character or have been induced to alter his position for the worse in some material respect." 31 C.J.S., 276,

Estoppel, par. 74. The general rule is that an insurer who withdraws from the defense of an action is estopped to deny liability under the policy if its conduct results in prejudice to the insured; but it is not estopped to do so if its action does not result in any prejudice to the insured. Southern Farm Bureau Casualty Insurance Company v. Logan (Miss. 1960), 119 So. 2d 268.

No facts were alleged in the appellee's bill of complaint to show that the appellee was misled or harmed by any act of the appellant or that he was induced to act in a manner different from that in which he otherwise would have acted. No facts were alleged in the appellee's bill to show that any prejudice resulted to the appellee because of the appellant's delay in notifying the appellee that there was no coverage of the claims. No suit had been filed by Fairley or Littlefield at the time notice was given to the appellee that there was no coverage of the claims under the policy; and the appellee, after receiving notice that the appellant denied coverage under the policy, had ample time to employ an attorney, make his own investigation of the claims and negotiate a settlement of the claims before the convening of the November 1956 term of the circuit court.

The chancellor in our opinion should have sustained the general demurrer filed by the appellant. The decree of the lower court overruling the appellant's general demurrer and entering final judgment against the appellant is therefore reversed and the cause remanded.

Reversed and remanded.

*McGehee, C.J.,* and *Lee, Holmes, Ethridge* and *Gillespie, JJ.,* concur.

HALL, J., dissenting:

I am unable to bring myself in accord with the majority opinion in this case. The policy involved herein shows that there was insured a 1956 600 Cab and Chasis to be used for commercial purposes only. The question

may immediately be asked, "What in the world could a person do with a cab and chasis which contains no other mechanism for hauling other than the attachment for a trailer?"

The policy in this case was written by Moran Insurance Agency of Ocean Springs, Mississippi, and that agency was a general agent of Hartford Accident & Indemnity Company. The accident of this vehicle occurred on May 28, 1956, and Mr. Lockard immediately gave notice to Moran's Insurance Agency. It is undenied that he was assured by Moran's Insurance Agency that he was fully covered under the policy and that the liability carrier would take over the investigation, negotiation and defense of any claims against him as a result of the accident. The accident in question occurred about 18 miles north of Biloxi, Mississippi, and the insurance company had the truck which was damaged in the accident carried to a garage in Biloxi, selected by it, for repairs. In fact, the insurance company took over the matter and negotiated toward a settlement of all claims arising out of the accident and so notified the appellee.

In the meantime, Gaston Fairley and Manson Littlefield employed an attorney to represent them in causes of action for personal injuries and property damage against him. The appellee forwarded the letter notifying him of the employment of an attorney to appellant's agent and the appellee notified the attorney for Fairley and Littlefield. This notice was to Mr. C. B. Corban, who was unquestionably the representative of appellant, on the payroll of appellant, and acting within the scope of his authority to investigate, negotiate, settle and dispose of claims. Mr. Corban notified the attorney for Fairley and Littlefield that the matter had been referred to him and that the claims were fully covered by insurance and that he would shortly see them to adjust the matter. From the date of the accident on May 28, 1956, through the succeeding months of June, July and August and up until the 26th day of September the appellee had no

notice from the appellant other than he was fully and completely covered under the insurance policy issued by the appellant. Because of this action on the part of appellant appellee was lulled into a belief that he was fully protected and he made no effort to investigate, negotiate and settle the claims because he was acting upon the assurance of appellant that he was fully covered under the policy.

On September 24, 1956, after the appellee had been lulled into this sense of security, the insurance company addressed a letter to the Moran Insurance Agency and denied coverage under the policy and two days later the Moran Insurance Agency mailed to the appellee a copy of the letter of September 24th. Throughout this period the appellee had been led to believe that he was fully covered, had been assured that the insurance company would adjust the matter and he now contends that the actions of the appellant conclusively estop the appellant from denying coverage in the case in question. The appellee has most assuredly been placed at a great disadvantage by the conduct of the insurance company. See Izard v. Mikell, 173 Miss. 770, 163 So. 498; Martin v. Hartley, 208 Miss. 112, 43 So. 2d 875; In Re Stoball's Will, 211 Miss. 15, 50 So. 2d 635; Stokes v. American Central Ins. Co., 211 Miss. 584, 52 So. 2d 358; Crooker v. Hollingsworth, 210 Miss. 636, 46 So. 2d 541, 50 So. 2d 355.

*Arrington* and *McElroy, JJ.*, join in this dissent.