**Boyd BLACK, Plaintiff-Appellee,
Cross-Appellant,**

v.

**FIDELITY & GUARANTY INSURANCE UNDERWRITERS, INC., Defendant-Appellant, Cross-Appellee.**

**No. 77–3470
Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1978.

---

\* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

John W. Crowell, Aubrey E. Nichols, Columbus, Miss., for defendant-appellant, cross-appellee.

James D. Waide, III, West Point, Miss., for plaintiff-appellee, cross-appellant.

Before THORNBERRY, GODBOLD and RUBIN, Circuit Judges.

THORNBERRY, Circuit Judge:

This diversity insurance case [1] requires us to interpret Mississippi law. A truck

1. Plaintiff is a Mississippi resident, and defendant is incorporated and has its principal place of business in states other than Mississippi.

The complaint sought nearly $40,000 in damages.

owned by plaintiff Black was destroyed in a collision with a car on July 18, 1975, in Choctaw County, Miss. However, 11 days before the wreck, defendant insurance company had mailed notice of cancellation to Black, advising him that his insurance policy covering the truck would be cancelled on July 17 for nonpayment of premium. The company refused to pay Black's ensuing claim on the ground that the policy had been cancelled on the day prior to the accident, and this suit followed.

The district court granted partial summary judgment for plaintiff on the issue of defendant's liability, holding that the cancellation became effective ten days following actual receipt of notice by plaintiff, not ten days after it had been mailed. A jury then found that the other vehicle in the accident was uninsured and awarded plaintiff $6000 for property damage and $2250 for loss of income resulting from the property damage. The district court, which had refused to present a punitive damages issue to the jury, subsequently held that, under the policy plaintiff was not entitled to recover for the lost income. Judgment for plaintiff was entered for $6000, plus statutory interest, and defendant appealed. Plaintiff cross-appealed on the issue of damages. For the reasons stated below, we affirm in part and reverse in part.

## I. NOTICE OF CANCELLATION

Defendant contends that the district judge erred in holding that the cancellation became effective ten days after plaintiff received notice, and argues that under Mississippi law, cancellation for nonpayment of premiums is effective ten days after notice of such cancellation is mailed to the policyholder.

In 1964, the Mississippi Supreme Court held that an insurance policy was properly cancelled when the insurer mailed notice of that cancellation to the insured, since the policy itself provided that such mailing constituted sufficient proof of notice. Actual receipt of the notice was thus not required. *Employers Mut. Cas. Co. v. Nosser,* 250 Miss. 542, 164 So.2d 426 (1964).

The court was careful to point out that the state had no statutory provisions affecting notice and cancellation of insurance policies and indicated that the presence of such a statutory scheme would possibly call for a different result. 164 So.2d at 434. In 1970, the Mississippi Legislature filled the void by passing the following statutes:

§ 83–11–5. Notice of cancellation.

No notice of cancellation of a policy to which section 83–11–3 applies shall be effective unless mailed or delivered by the insurer to the named insured at least twenty (20) days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium at least ten (10) days' notice of cancellation accompanied by the reason therefor shall be given. Unless the reason accompanies or is included in the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer not less than fifteen (15) days prior to the effective date of cancellation, the insurer will specify the reason for such cancellation.

This section shall not apply to nonrenewal.

§ 83–11–9. Proof of notice.

Proof of mailing of notice of cancellation, or of intention not to renew, or of reasons for cancellation to the named insured by a certificate of mailing, at the address shown in the policy, shall be sufficient proof of notice.

The section references are to the Mississippi Code of 1972.

A case spawned by the ill winds of Hurricane Camille reached the state's highest court in 1975. In *Nelson v. Phoenix of Hartford Ins. Co.,* 318 So.2d 839 (Miss.1975), the court distinguished *Nosser* and held that actual receipt of the notice was required when the insurance policy provided that notice of cancellation was to be *given.*

The policy in *Nosser* stated that the company could *mail* notice to the insured and that the mailing constituted sufficient proof of notice. In *Nelson*, however, the policy required that notice be "given" to the insured.

The *Nelson* decision does not address the impact of the 1970 legislation because the policy was cancelled almost a year before the statutes became effective. Neither party in the instant case cites a Mississippi decision construing the statutes, and our research reveals none. Accordingly, we must embark on an *Erie*[2] journey into virgin judicial territory.[3]

Defendant argues that because the policy provided for cancellation "by mailing to the named insured . . . written notice," *Nosser* is controlling. In addition, defendant asserts that the statutes enacted in 1970 represent a codification of the *Nosser* decision.

■ We disagree, although candor compels admission that the statutory scheme is less than clear and is capable of varying interpretation. In these circumstances, and when state decisional law affords no guidance, the interpretation of the district judge, who is well versed in the intricacies and trends of local law, is entitled to great deference. *Bishop v. Wood*, 426 U.S. 341, 346 & n.10, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (citing cases).

Section 83–11–5 clearly distinguishes between cancellation for nonpayment of premium and cancellation for any other reason.[4] In the former situation, at least ten days' notice "accompanied by the reason therefor shall be given." In the latter,

notice of cancellation is not effective "unless mailed or delivered by the insurer to the named insured at least twenty days prior to the effective date of cancellation." We can overlook neither the different terms employed in each situation nor the grammatical structure of each clause. The legislature could have easily repeated the words "mailed or delivered" in connection with notice of cancellation for nonpayment, but it utilized the word "given" instead. Moreover, the clauses are not parallel grammatically. One states that "no notice . . . shall be effective unless mailed or delivered," while the other says that "notice . . . shall be given." If, as defendant argues, the term "given" is simply a generalized synonym for the previously used terms "mailed or delivered," one would think that the sentence would have been written to make the parallel obvious.[5]

More significantly, the Mississippi Supreme Court in *Nosser* emphasized that it was writing on a clean slate, unimpeded by statutes. The court said:

[I]n all cases with the exception of one California and one Minnesota case where actual receipt of the notice of cancellation was held necessary, despite the policy provision that notice of cancellation mailed to the address of the assured . . . should be sufficient notice, *a statute required that the insured be given notice of the cancellation in a specified number of days.* Apparently such a statutory provision overrides a clause in the policy which would tend to nullify the intention of the legislature . . . . .

[N]otice of cancellation is effective if ". . . mailed or delivered by the insurer to the named insured . . . ." with ten (10) days notice for cancellation for nonpayment of premium and twenty (20) days notice where cancellation is for any of the other grounds . . . . .

Reply brief at 3. Had the legislature so intended, it could have said so in precisely that fashion. It did not do so, however, and we must assume that it used the term "given" for a reason.

2. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

3. Our journey would be unnecessary if the Mississippi courts would accept certified questions. This case is an excellent example of the utility of certification. *See generally* Brown, *Certification—Federalism in Action*, 7 Cumberland L.Rev. 456 (1977).

4. The various grounds for cancellation are set out in § 83–11–3.

5. Defendant would have us read the statute as follows:

164 So.2d at 434 [emphasis original]. After *Nosser* was decided, the Mississippi Legislature passed such a statute, requiring that at least ten days' notice "shall be given" when cancellation is for nonpayment of premium. The *Nelson* case, though decided after the adoption of § 83–11–5, also indicates the distinction between requiring that notice be "given" and allowing a mere "mailing" to be sufficient. 318 So.2d at 842.

In dealing with other types of insurance policies, the legislature has distinguished between notice of cancellation that must be "given" and notice of cancellation that may simply be "mailed or delivered." For example, § 83–9–5, which deals with accident and health insurance policies, provides in subsection (2)(e) that the insurer may cancel the policy at any time by written notice "delivered to the insured, or mailed to his last address as shown by the records of the insurer." In contrast, § 83–41–201, which pertains to hospital, medical, or surgical insurance, states a general rule that an insurer shall not cancel such a policy "without first giving written notice to the insured." Therefore, we cannot assume that the legislature picked the word "given" out of the air when writing § 83–11–5.[6]

■ Accordingly, we hold that § 83–11–5 requires that notice of cancellation for nonpayment of premium be given at least ten days before the effective date of the cancellation and that the timeliness of the notice is to be determined by the date of its receipt rather than by the date of its mailing. If cancellation is for a reason other than nonpayment, the notice may be mailed or delivered at least twenty days before the cancellation date. The district court's grant of partial summary judgment on the issue of defendant's liability under the policy is thus affirmed.

## II. LOSS OF INCOME

Plaintiff by cross-appeal argues that the district court erred in striking the jury's award of $2250 in damages for loss of income. The district court did so after defendant filed, some three months after entry of judgment, an amendment to its timely filed motion for judgment n. o. v., new trial, or remittitur. In this amendment, defendant argued for the first time that such an award is impermissible under the state's uninsured motorist statute, Miss. Code Ann. § 83–11–101.[7] The thrust of

---

6. Defendant makes three other arguments in opposition to our interpretation, and we find all unpersuasive. First, defendant contends that our reading of the statute is at odds with its obvious rationale, *i. e.*, to give more notice protection to persons who have paid their insurance premiums than to those who have not. Such a rationale does seem obvious, but it is not illogical or inconsistent to suppose that the legislature also intended to make mailing of the notice sufficient for the longer 20-day period while requiring receipt for the shorter 10-day time frame.

Second, defendant argues that if our reading of § 83–11–5 is correct, the effect of the statutory language must have escaped the Mississippi Supreme Court when it decided the *Nelson* case some five years after the statute was passed. We need only note that the *Nelson* court was not presented with a question of statutory interpretation, since the policy involved had been cancelled well before the statute went into effect. Finally, defendant claims our interpretation makes § 83–11–5 inconsistent with § 83–11–9, which provides that proof of mailing of a cancellation notice "shall be sufficient proof of notice." We find no inconsistency, for that section obviously applies

when the "mailed" notice portion of § 83–11–5 comes into play and does not apply when notice is required to be "given" under that section.

7. This statute, as amended in 1974, provides:

No automobile liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law, as amended, under provisions approved by the commissioner of insurance; however, at the option of the insured, the uninsured motorist limits may be increased to limits not to exceed those provided in the policy of bodily injury liability insurance of the insured or such lesser limits as the insured elects to carry over the minimum requirement set forth by this section. The coverage herein required shall not be applicable where any insured named in the policy shall reject the coverage in writing and provided, further, that unless the named insured re-

plaintiff's contention is that the issue was not properly before the district court, having been raised in untimely fashion.

 ·Rather than address the thorny question of whether a timely motion under Rules 50 & 59, Fed.R.Civ.P., can belatedly be amended to assert a new ground,[8] we choose to examine that ground itself. Although the policy itself provided for "insurance against uninsured motorists," with no words of limitation or condition,[9] the district court concluded that § 83–11–101 limits uninsured motorist coverage to damages for bodily injury or death. The Mississippi Supreme Court, however, has made clear that the statute simply "requires each policy to provide the minimum coverage," *Harthcock v. State Farm Mut. Auto. Ins. Co.*, 248 So.2d 456, 462 (Miss.1971), and that an insurer and an insured are "free to contract as to uninsured motorist coverage *in any respect* so long as the required coverage is not cut down by the policy provisions." *Talbot v. State Farm Mut. Auto. Ins. Co.*, 291 So.2d 699, 701 (Miss.1974) (emphasis added). A post-*Talbot* amendment to § 83–11–101 added a maximum for excess bodily injury coverage—*i. e.*, "not to exceed [the limits] provided in the policy of bodily injury liability insurance of the insured"—but did not otherwise limit the freedom of the parties to contract for additional uninsured motorist coverage. The district court thus erroneously granted defendant's motion.

## III. UNINSURED MOTORIST

Having concluded that the district court erred in striking the jury's award of $2250 for loss of income, we turn to a related question raised by defendant: was there

sufficient evidence to support the jury's finding that the vehicle that hit plaintiff's truck was uninsured? This question is relevant only to damages awarded for loss of income, since the physical damage portion of the policy covers the loss of the truck itself.

 Defendant moved for a directed verdict on this issue, thereby preserving the sufficiency of evidence question for review. The district court denied the motion, and in making its ruling, the court was required to apply a federal, rather than state, test for sufficiency of the evidence. *Boeing Co. v. Shipman*, 411 F.2d 365 (5 Cir. 1969) (en banc); *Midland Ins. Co. v. Markel Service, Inc.*, 548 F.2d 603 (5 Cir. 1977). Under *Shipman*, the standard applicable on appeal is whether there is substantial evidence to support the jury's findings. We are required to view the evidence in a light most favorable to the non-moving party—the plaintiff in the instant case—and to draw all reasonable inferences in his favor.

 The jury could have reasonably concluded that the vehicle involved in the wreck with plaintiff was uninsured. The driver and his stepfather testified that they carried no insurance on the car and knew of no one who did. The driver also stated that he did not own the vehicle, that the owner had died some two years before the wreck, and that the car had apparently been abandoned at a third person's house for at least six months. Moreover, plaintiff testified that he had made an attempt—perhaps a halfhearted effort, at best—to determine whether the car was insured. Although the evidence was in some respects contradictory,[10] it is clearly sufficient to support the

---

quests such coverage in writing, such coverage need not be provided in any renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

8. See 6A *Moore's Federal Practice* ¶ 59.09[2] (2d ed. 1974); 11 Wright & Miller, *Federal Practice & Procedure* § 2013 (1973).

9. Defendant filed the belated amendment only after the district court denied its motion to supplement the record with a copy of its "stan-

dard" uninsured motorist policy that limits coverage to bodily injury or death. Plaintiff's policy, as introduced into evidence after a stipulation by the parties as to its authenticity, simply provides for "insurance against uninsured motorists," with no further elaboration.

10. For example, plaintiff testified that, according to the driver's stepfather, the driver had purchased the automobile. Nonetheless, if the jury believed this testimony, it could obviously have concluded that the vehicle was uninsured,

jury's findings, especially considering that the defendant offered no evidence whatsoever.

## IV. PUNITIVE DAMAGES

Plaintiff contends on cross-appeal that the district court erroneously directed a verdict in favor of defendant on the issue of punitive damages. Plaintiff's claim was based on his allegation and subsequent testimony that an employee of the local insurance agent had orally agreed to renew the policy a few days prior to the wreck. In sum, plaintiff claimed that he went to the agent's office after receiving notice of cancellation, offered to pay his premium, and inquired about increasing his coverage. The employee allegedly told him that she could not write a policy in the amount of the increase and explained that she would have to contact the company's state office. Plaintiff then "offered her a check to keep the other policy in force till the [new] policy came through," but she refused, indicating that she would rather handle everything at one time and that meanwhile the present policy would stay in effect. He also testified that when he telephoned the employee after the accident had occurred, she told him that the policy had been reinstated, that the agent had signed it, and that the policy was at that moment on the agent's desk.

Defendant denied these allegations in its answer, and the employee's deposition refutes plaintiff's story. However, the deposition was not offered into evidence, and the district court had before it only the plaintiff's testimony when confronted with defendant's motion for a directed verdict in its favor on the issue of punitive damages. The court granted the motion on the ground that plaintiff's proof was inadequate.

■ Under Mississippi law, an insurance company that has a legitimate or arguable reason for refusing to pay a claim is not subject to punitive damages. *Standard Life Ins. Co. v. Veal*, 354 So.2d 239 (Miss. 1977). In the absence of such a justifiable reason, the refusal is deemed an intentional wrong and an independent tort giving rise to punitive damages. *Progressive Cas. Ins. Co. v. Keys*, 317 So.2d 396 (Miss.1975).

■ Plaintiff contends that the company did not have an arguable or legitimate reason for refusing his claim, since the policy had been orally renewed prior to the accident and had been officially reinstated by the day of the mishap. The district court, in granting the defendant's motion for directed verdict, simply concluded that plaintiff's evidence was insufficient to establish the oral renewal. We disagree, for in these circumstances the district court must—as we must on appeal—view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in his favor. *Boeing Co. v. Shipman, supra.* Because the defendant offered no evidence to contradict plaintiff's story, his version must be taken as true for purposes of the motion for directed verdict.

■ The district court should have determined whether, on these "facts," the insurance company had a legitimate or arguable reason to refuse the claim. This determination requires analysis of whether the alleged oral representation constituted a valid renewal of plaintiff's policy. The question, which implicates Mississippi law of agency,[11] oral agreements,[12] and waiver and estoppel,[13] is best left to the district

since neither the driver nor his stepfather carried insurance on the car.

11. *See* Miss.Code Ann. § 83–17–1; *American Cas. Co. v. Whitehead*, 206 So.2d 838 (Miss. 1968); *Bankers Fire & Marine Ins. Co. v. Dungan*, 240 Miss. 691, 128 So.2d 544 (1961).

12. *See Southern Ins. Co. v. Ryder Truck Rental, Inc.*, 240 So.2d 283 (Miss.1970); *Canal Ins. Co. v. Bush*, 247 Miss. 87, 154 So.2d 111 (1963);

*Smith Trucking, Inc. v. Cotton Belt Ins. Co.*, 556 F.2d 1297 (5 Cir. 1977) (Mississippi law).

13. *See Hartford Accident & Indem. Co. v. Lockard*, 239 Miss. 644, 124 So.2d 849 (1960); *Employers Fire Ins. Co. v. Speed*, 242 Miss. 341, 133 So.2d 627 (Miss.1961); *Providence Washington Ins. Co. v. Weaver*, 242 Miss. 141, 133 So.2d 635 (Miss.1961); *Southern Ins. Co. v. Ryder Truck Rental, Inc., supra.* Cf. *Cole v. Motors Ins. Corp.*, 243 So.2d 556 (Miss.1971).

court in the first instance. Accordingly, the case is remanded to the district court for further proceedings. If there is no arguable basis under Mississippi law for contending that the oral representation was ineffective, plaintiff is entitled to have the issue of punitive damages submitted to a jury, which would be required to determine whether the representation was in fact made.[14]

## IV. CONCLUSION

The district court's striking of the jury's award of $2250 in damages for loss of income is reversed and the case is remanded for reinstatement of that amount. In addition, the plaintiff is entitled to a new trial limited to the issue of punitive damages, the district court having erred in directing a verdict in favor of the defendant on this issue. In all other respects the judgment of the district court is affirmed.

AFFIRMED in part, REVERSED in part, and REMANDED.

14. We note that had the only question been whether the policy had been effectively cancelled on the day preceding the accident, the defendant clearly would have had an arguable reason for denying the claim, given the ambiguity of Miss.Code Ann. § 83–11–5. *Cf. Lincoln Nat'l Life Ins. Co. v. Crews,* 341 So.2d 1321 (Miss.1977); *Standard Life Ins. Co. v. Veal, supra. Compare Bellefonte Ins. Co. v. Griffin,* 358 So.2d 387 (Miss.1978).