JONES, Justice.
This case is appealed from the Chancery Court of the First Judicial District of Hinds County. It may assist in understanding the issues that the parties be designated together with their connection with the transaction, before we enter into a general discussion.
Hood and Beasley Distributors, Inc. (hereinafter called Hood) instituted the suit by filing a bill of complaint against Du-puy-Busching General Agency, Inc. (hereinafter called Busching), Ryder Truck Rental, Inc., renters of automotive equipment (hereinafter for brevity called Ryder) and Southern Insurance Company (hereinafter called Southern), an insurance company.
Hood was a long-haul carrier of Hazle-hurst, Mississippi. On or about November 16, 1966, one of Hood’s units on a trip to the Northeastern part of the United States became disabled at Atlanta, Georgia. Hood rented a tractor from Ryder to substitute for the disabled unit. Ryder required collision insurance to cover the rented vehicle. Hood, after being called by his driver from Atlanta, contacted its insurance agency, Crystal Springs Insurance Agency of Crystal Springs, Mississippi. This agency in turn contacted Busching at Jackson, and the result was an oral agreement to substitute the Ryder unit for the disabled unit in a policy theretofore issued by Southern. This oral agreement was at once evidenced by a wire from Busching to Ryder’s man at Atlanta, and, again later by an endorsement issued by Busching after the accident hereinafter mentioned making the substitution requested in pursuance to the oral agreement made prior to the accident.
Ryder filed a cross-bill against Hood seeking to recover the value of its destroyed unit, if insurance was found not to exist as required by the contract between Ryder and Hood, but the disposition of the case by this opinion will render unnecessary a decision on the cross-bill against Hood, and, although the deductible in the insurance policy was not allowed, it was stated on argument that as to that feature, the cross-bill was withdrawn.
After hearing the evidence, the chancellor dismissed the original bill by Hood and the cross-bill filed by Ryder, both being dismissed with prejudice. He gave judgment for Ryder against Southern in the sum of $13,250 together with interest and costs. He found the value of the destroyed tractor (burned while in Hood’s possession after leaving road and turning over) to be $13,500 and deducting the $250 deductible, the judgment was as aforesaid. Other than Ryder, the only party appealing is Southern. In its assignments of error, it is alleged that the lower court erred in rendering a decree for Ryder against Southern in any amount. Under this assignment and in the brief, there are argued three questions: (1) that the Southern policy could not be made to insure a rented vehicle; *285 (2) the actual binding of the coverage prior to the loss was not with Southern; and (3) the acts of Busching subsequent to the loss cannot serve to place liability upon Southern.
We affirm the case.
UNDER POINT I, it is argued by Southern that the policy issued by Southern by its terms precluded the insuring of a rented • vehicle. The policy itself had the following provision on the first page thereof :
Item 6. Unless otherwise stated herein: (a) Except with respect to bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance, the insured is the sole owner of the automobile; * * * (emphasis added).
Under the “conditions,” a part of Section 1(c) requires notice to the company after loss. “ * * * the sworn statement of the insured to set forth the interest of the insured and of all others in the property affected, any encumbrance thereon. * * * ” (emphasis added). Section 11 of the “conditions” reads as follows:
11. Changes: Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, (emphasis added).
Southern relies upon Section IV covering automatic insurance for newly acquired automobiles. The automatic coverage is not involved here.
Southern, together with other companies writing collision insurance, had organized a corporation known as APA which was a general agent for Southern and designated agencies in various states to represent it.
The contract between Southern and Busching, made by APA acting for Southern, contained nothing prohibiting the issu-anee of policies on rented vehicles.
It did contain a provision which, by inference, authorized the said agent to bind the company for insurance. However, insofar as the public is concerned, a secret contract between the agent and the insurance company cannot affect the status of the authority of the agent. As to the public, it is what the laws of Mississippi say and what the public is led to believe by the actions of the insurance company and agency. There is no proof whatsoever that any act of Busching or any statement of any kind made to the public (either by Southern or Busching) advised them of any limitations upon Busching’s authority. As a matter of fact, Busching was a general agent for the company. They signed and delivered the policy in existence. Busching had been writing insurance for Southern and was fully advised of the situation here existing that insurance was desired to cover a rented tractor and there was no statement or indication of any kind to Hood or Ryder that they had no authority to cover rented vehicles. The evidence and law established to the satisfaction of the chancellor that Busching was a general agent.
Some of the other evidence on the issue raised by Point I is that, as shown by the testimony and the contract between Southern and Busching, Southern, through its general agent, APA, supplied the blank forms.
On December 22, 1966, Southern wrote APA as follows:
Our policy contract insures only against specified hazards and in no event does it include any other — contractual or otherwise. The fact that contractual obligations by way of a lease agreement are not excluded certainly doesn’t signify *286 there may he an anticipation of coverage for such obligations. The policy doesn’t exclude a lot of things hut that doesn’t mean we cover them.
We simply cannot be concerned with the contractual obligations entered into between our policyholder and the owner of the truck destroyed.
Our policy affords no protection whatever for such leased equipment.
jjí >j« ‡ 5{C ifc
Our problem to us seems to be rather simple and that is that we must adhere to the policy as it is written and in the absence of any endorsements thereto, we simply have no insurance on this unit and we may as well make it clear to everyone without further adieu, (emphasis added).
On January 5, 1967, APA wrote Hood:
PLEASE BE ADVISED that Southern Insurance Company hereby disclaims any and all liability for the damages allegedly sustained to a 1965 Ford, bearing serial number H950DA950U696810 arising out of the above accident.
The policy of insurance issued herein to the Named Insured was on a specified unit basis and the unit involved in the loss was not covered.
On April 6, 1967, Southern wrote Busch-ing:
Your request for reply is being referred to Associated Producers Agency, Inc. inasmuch as they are supervising this matter in its entirety. In our conversation with Mr. Leonard Davis of APA, we have agreed with him it will be necessary we inspect the pleadings before we can determine whether we may be obligated to defend you in this matter. Mr. Davis will procure a copy of the pleadings.
On April 18, 1967, Southern Insurance Company wrote Associated Producers Agency, Inc. in which it was stated:
Upon receipt of yours of April 10 we not only closely examined the Declaration but we attempted to review what we hope is a complete file on this matter.
% %c ‡ ‡ ‡
December 22 we wrote you in detail relating our reasons for the decision that we had no coverage in this case. At that time there was no endorsement attached to the policy affording any coverage and we dare say there wasn’t an endorsement on the policy at the time you wrote your certified letter of January 5, to the insured denying liability.
All at once out of the clear blue comes a letter from the insured’s lawyer dated February 1, addressed to you forwarding a copy of an endorsement supposedly issued by these agents on December 7, 1966.
ifc Ofi ifc ifc ‡
We believe you gentlemen know and we are certain we know that our named insured had no insurable interest in this vehicle and Dupuy-Busching should know that also, (emphasis added).
The letter of April 18, 1967, shows that when the company first had notice of this claim, they took the position that there was no endorsement, and, therefore, there was no coverage. Then when a copy of the endorsement was shown them, they took the position that insured, Hood, had no insurable interest in the vehicle.
Mr. Curtis, Assistant Vice-President of Southern, testified, after examining the contract between Southern and Busching while on the witness stand, that said contract had no limitation as to rented vehicles. See also letter of December 22, 1966, supra.
*287 Both the evidence and the contract established that Busching could bind property on insurance contracts. The evidence was ample for the chancellor to find that neither the policy nor the agent’s contract prohibited the insuring of a rented vehicle and also sustained the fact that Busching was general agent.
Section 5706, Mississippi Code 1942 Annotated (1956); McPherson v. McLendon, 221 So.2d 75 (Miss.1969); Canal Insurance Co. v. Bush & King, 247 Miss. 87, 154 So.2d 111 (1963).
POINT II. Under this point, appellant lays great stress on the fact that Ryder was not advised as to the name of the company carrying the insurance. They say that the agreement was invalid because of this fact. Ryder was not the one to whom the policy was issued; it was issued to Hood. The contract was made with Hood and there is no complaint that Hood did not know which company was to cover it. Mr. Hood himself testified that Southern had existing insurance on their equipment and that when Ryder’s question arose, he undertook to contact his insurance agency in Crystal Springs, but it was closed, and he then talked to a Mr. Brewer, an associate of his agent. Mr. Brewer contacted Busching and told them what was desired and they agreed to cover it and also agreed to have a wire sent to Ryder advising that they had coverage. Mrs. Gunter, a witness for Busching, who handled the matter for that agency after Brewer discussed it with her testified that it was simply a “substitution” of one vehicle for another and that she sent the wire the next morning advising Ryder that Hood had the collision coverage.
Appellant says there was no contract because Ryder was not advised of the name of the insurance company and relies upon Employers Fire Insurance Co. v. Speed, 242 Miss. 341, 133 So.2d 627 (1961). A reading of the Speed case, however, will easily distinguish it from the situation before us. There, Speed, the applicant for insurance was not advised as to which insurance company would cover an addition to a development in which he was interested. His insurance agency represented numerous companies and the project had policies issued by six or eight different companies, but, he, Speed, was not advised and apparently it was not decided as to which one would carry this insurance. Here, Hood from his own testimony, manifests that he knew it would be issued by Southern. Southern already had the existing policy and according to Mrs. Gunter, it was strictly a question of substitution. In Liverpool & London & Globe Insurance Company v. Hinton, 116 Miss. 754, 77 So. 652 (1917), we quote syllabi 2 and 7:
2. Same.
Where an authorized agent of an insurance company orally agreed to renew a policy, but nothing was said about any change in its terms or the amount of the premium the terms of the new policy will be presumed to be the same as those in the old policy.
(emphasis added).
7. Insurance. Renewals. Contracts. Execution.
A contract for the renewal of a fire policy becomes complete when an authorized agent of the insurer agrees to such renewal.
If a request for the “renewal” of a policy carries the presumption that it will be on the same terms as the old policy, then a request to “substitute” one piece of equipment for another in a policy already issued should carry a presumption that the substitution was to be made by the company carrying the original policy. The finding, that the agreement to cover *288 the rented vehicle by the company that had the existing policy, was amply justi-corroborated by the later endorsement.
As far as Ryder was concerned, they had fied by the testimony in this case, particularly that of Mr. Hood and Mrs. Gunter, only requested that they be advised that collision insurance had been obtained. This was done but the contract itself was with Hood, who, having reason to know that it would be with Southern was perfectly satisfied.
POINT III. Under this point, the appellant begins his argument with this statement :
At the outset, we, of course, admit that it is not unheard of for a general agent to issue a policy of insurance or to issue an endorsement after the loss occurs where this is done to confirm a firm, oral commitment made to the insured prior to the loss that he was in fact covered against certain risks with a certain company. But this is not what happened here.
They follow this with argument based on the Speed case heretofore mentioned which, as stated above, is easily distinguishable from the case at bar. It is true, as stated in the Speed case, that the identity of the parties and the insurance contract is essential to establish a binding contract. The appellant bases his-argument mainly on the opinion by the chancellor: “I hold as a mixed question of law and fact that the replacement Ford was covered from the time that Mr. Busching or Mrs. Gunter assigned it, in their own minds anyway, to Southern Insurance Company.” The chancellor overlooked entirely the evidence of Mr. Hood on this point and also overlooked the fact that the contract was not made with Ryder but was made with Hood. Hood had the policy, was the insured, and, as finally effectuated by the endorsement, understood that the proceeds of any loss would be payable to Ryder as Ryder’s interest might appear. The contract, as stated, was with Hood and not Ryder. Mr. Hood understood that the coverage would be with Southern. Mrs. Gunter testified that it was her intent to issue it with Southern and when issued, as a matter of fact, it was with Southern. It is true that the endorsement was not issued until after the accident. The argument by appellant is based upon the statement by Brewer in the conversation with Lumpkin, agent of Ryder, that the insurance was with National Indemnity Company. As heretofore stated, Ryder was not interested in the company, but was interested in the coverage and when Ryder received advice that coverage had been obtained, they released the truck. Mrs. Gunter said she told Brewer it was to be with Southern and Hood had the right to assume it would be. The making of the contract is corroborated by the wire to Ryder and the endorsement.
The reason for the delay in the actual writing of the endorsement was shown by the witnesses of Busching to be that this was a temporary proposition and as soon as the temporary necessity expired, the old policy would be reinstated and that they did not issue a written endorsement in this case until after the accident, when they were requested to do so by APA. It is admitted by both sides that verbal binders are often made (and that this procedure is not unusual in the industry) and the actual endorsement not actually issued until afterwards. See Canal Insurance Co. v. Bush & King, 247 Miss. 87, 154 So.2d 111 (1963). In this case, there is no evidence that the agreement was to be put on Hood’s policy by an endorsement, but Busching agreed to cover the tractor. As we see it, this was an oral contract for insurance (shown by cases above to be valid) accepted by Hood, the insured, and that the verbal agreement became binding. It is not a question of waiver or extension of coverage. There was sufficient evidence *289 for the chancellor to hold the agreement valid as made with the insured, Hood.
Southern commented that Hood had no insurable interest in this property in spite of the fact that Hood had a contract with Ryder under the terms of which he was required to carry collision insurance and was also liable to damages to the truck. They did not settle on their defense until this suit was filed.
Certainly, Busching as general agent, could have issued a new policy covering the rented vehicle and could have eliminated the other tractor from the original policy. What they did in this case was equivalent to the issuance of a new policy insofar as Hood was concerned because the general agent represented that they were insuring this new tractor and Southern then would be estopped to claim that it was not insured because its agent representing them may have possibly used the wrong method.
The fact that the new vehicle was to be covered by Southern is asserted by Mrs. Gunter, Hood’s evidence, the presumption accompanying use of the word “substituted,” and later issuance of the endorsement. Mrs. Gunter also testified she told Brewer it was to be with Southern.
It is unthinkable that the company should be allowed to escape liability on a valid oral contract because its agent chose an assertedly invalid way to evidence the oral contract. There was an unquestionably valid manner to handle it. An oral contract was made to cover, on the strength of which Busching wired that coverage was had; Ryder released its property — they were not interested in the name of the insurance company; and Hood accepted Ryder’s property under Ryder’s contract providing for liability for damage not insured. Southern is estopped to claim the endorsement, made by its general agent, renders the oral agreement void.
This is a suit on the original valid oral contract made with Hood, the insured, which was evidenced, in addition to the testimony, by the wire, and the later endorsement. It is not a suit on the endorsement alone.
Affirmed.
GILLESPIE, P. J., and RODGERS, BRADY, and INZER, JJ„ concur.