**SMITH TRUCKING, INCORPORATED,**
**Plaintiff-Appellee,**

v.

**COTTON BELT INSURANCE CO., INC.,**
**Defendant-Third-Party**
**Plaintiff-Appellant,**

v.

**TATE INSURANCE AGENCY, INC., and**
**John G. Effler, Third-Party**
**Defendants-Appellees.**

No. 75–3117.

United States Court of Appeals,
Fifth Circuit.

Aug. 5, 1977.

Roger C. Landrum and Richard L. Forman, Jackson, Miss., for defendant-third-party plaintiff-appellant.

Ray M. Stewart and J. Edmond Pace, Picayune, Miss., for Smith Trucking Inc.

Roger T. Clark, Gulfport, Miss., for Tate, et al.

Before WISDOM and GEE, Circuit Judges, and BOOTLE *, District Judge.

BOOTLE, District Judge:

In this diversity action Smith Trucking, Incorporated (Smith Trucking) sought to enforce against Cotton Belt Insurance Co., Inc. (Cotton Belt) a liability insurance contract covering the operation of nine tractors and nine trailers. Cotton Belt asserted that it had not insured the particular trailer which was involved in a fatality-causing accident, inasmuch as that particular trailer was not properly included or listed in the policy. Cotton Belt impleaded Tate Insurance Agency, Inc. (Tate Agency) and its manager, John Effler, alleging that if Cotton Belt were liable to Smith Trucking, Tate Agency would be responsible because it had not properly included or listed the trailer in the application for the policy and had not otherwise informed Cotton Belt that said trailer was to be insured. The district court in a non-jury trial held that at the time of the accident Cotton Belt had an enforceable oral insurance contract with Smith Trucking and that Tate Agency and Effler were not liable. We affirm.

I.

On August 8, 1973, Alice Mae Logan was struck and killed by a Smith Trucking tractor-trailer unit near Vicksburg, Mississippi. Smith Trucking requested Cotton Belt to defend the wrongful death action brought by a natural parent of the deceased. Cotton Belt denied coverage on the grounds that the trailer involved was not listed as an insured vehicle in the policy. Although the tractor portion of the unit was admittedly insured, a provision of the policy excluded coverage whenever an insured tractor or trailer was connected to an uninsured counterpart. Cotton Belt also denied coverage on the additional ground that the tractor-trailer unit at the time of the accident was outside the radius of the policy's garaging point limitation. The factual situation is interesting. The Tate Agency had had at least two previous policies with Smith Trucking. The most recent one had been issued by Aetna Insurance Company. About May 1973, Aetna informed Tate Agency that it would not renew the policy when it expired in June 1973. That policy covered the tractors and trailers of Smith Trucking. Johnny Smith of Smith Trucking, received this same notification either from Aetna or from Tate Agency and Johnny Smith was understandably in the office of Effler, Tate Agency manager, on or about June 25, 1973. Effler, by telephone, contacted a lady, Mrs. Susan Weems, in the office of Dupuy-Busching Agency (Dupuy-Busching), Cotton Belt's general agent. She was in the Casualty Underwriting Department of Dupuy-Busching and Effler believed she was the casualty underwriter. Effler explained to her that Aetna had declined to renew the policy and that he "needed the coverage." She said to him "consider it bound." She gave him a policy number, telling him that he could consider that policy under binder effective June 25,

1973. Apparently the policy number she gave him was AC 18481, whereas the number of the policy later issued is AC 18402. Mr. Dupuy of Dupuy-Busching testified that his answer to this discrepancy would be that it was a scrivener's error or typographical error or something of that nature. Smith Trucking then knew it had coverage. But because of the delay in completing the paper work on July 30, 1973, Dupuy-Busching, over the signature of Judy Morgan, dispatched to Tate Agency this memorandum: "I am sorry to tell you that we have unbound the coverage on Smith Trucking because you never sent us the application. I called you last Tuesday and you said the application would be in by Friday. But . . . so this is to tell you that we are no longer responsible for the binding of this coverage." Later, and by telephone again, Dupuy-Busching "said that if we got the application in that that [canceling of the binder] was receded [sic, obviously 'rescinded'] and that it would be under binder." Thus as Effler testified, "pressed with the fact that if I didn't get the application in, they was [sic] going to get off of the binder", Effler mailed to Dupuy-Busching the written application and Dupuy-Busching received it on August 6, 1973. The application showed "Date coverage to be effective 6–25–73." The application was actually signed on or about July 25, 1973. A good clerical job was not performed in the preparation of the application. While the application listed nine tractors and nine trailers to be insured, one of the trailers listed was no longer owned by Smith Trucking and three of the trailers were listed on the application without identifying serial numbers. The trailer which was no longer owned had been traded in January 1973, approximately six months prior to the signing of the application for the trailer which was subsequently involved in the accident.

On August 8, 1973, the date of the accident, Dupuy-Busching issued and mailed to Tate Agency its policy covering the nine tractors and nine trailers as listed on the application, this policy having been typed by it on August 7, 1973.

A further complication is that the accident occurred outside a 55-mile radius of Nicholson, Mississippi and the policy as originally issued limited coverage to operation within that radius. However, on August 6, 1973, Smith Trucking had asked Tate Agency to change the garaging point for three of its units to Vicksburg, Mississippi, where it had a hauling contract with W. J. Runyan and Son, Inc., and advised Tate Agency also that W. J. Runyan and Son, Inc. needed a certificate of insurance. On August 7, 1973, W. J. Runyan and Son, Inc. telephoned Tate Agency, requesting directly this certificate of insurance showing coverage of the three Smith Trucking units. On the same day, August 7, 1973, Tate Agency issued and forwarded to Runyan the requested certificate of insurance covering "3 three 1973 GMC tractors", showing the effective dates of the insurance as "6–24–73 74". (This certificate reflects certain errors. Smith Trucking had requested Tate Agency to send Runyan a certificate of insurance on "3 Mack trucks and trailers" and advised Tate that he "wanted to change [his] garaging point and they would be working out of Vicksburg." Tate Agency fully intended to comply with that request and erroneously specified GMC tractors rather than Mack tractors, and erroneously omitted trailers.) On the afternoon of the same day Tate Agency telephoned Dupuy-Busching and made it aware that the certificate of insurance had been issued by it and that Smith Trucking was transferring the three rigs to Vicksburg and that Tate Agency was issuing a memorandum changing the garaging point as to these rigs. The evidence shows no dissent on the part of Dupuy-Busching—only full acquiescence. Dupuy-Busching had furnished Tate Agency with these certificate of insurance forms and according to Mr. Dupuy of Dupuy-Busching, Tate Agency had the authority to issue them. The change of garaging point was confirmed by memorandum dated August 8, 1973 from Tate Agency to Dupuy-Busching. This memorandum was sent "to have something in writing on this change of location . . . this is what the company [Dupuy-Busching] required."

This memorandum corrected the error as to the manufacturer of the trucks and also requested Dupuy-Busching to issue a certificate of insurance. It read:

Johnny Smith—Smith Trucking

Johnny has 3 three 73 Macks in Vicksburg, Miss. This is garaging base. 55 mi. Radius. Please issue Certificate to Runyan Const. Co. Vicksburg, Miss.

Because the accident happened on August 8, 1973 and Dupuy-Busching promptly learned of it the garaging point endorsement was not issued by it nor did it issue the requested certificate of insurance for W. J. Runyan and Son, Inc. Mr. Dupuy of Dupuy-Busching, fully cognizant of all the facts and circumstances of this case, testifying as to why no garaging point endorsement was issued, testified with admirable candor as follows:

. . . evidently what happened when this (memo of August 8, 1973), came in and a loss occurred, well, you know, like everything stopped, and you hate to get in any deeper than what you appear to be so you say well, I'm not going to do any more until I understand what's going on, and by the time any decision was made the company issued a notice of cancellation on the policy.

Mr. Dupuy testified further that Tate Agency's memorandum of August 8 was "very clear" and if he received it he would have considered it as being a request for an endorsement and he would have issued one. The evidence shows that it was received by Dupuy-Busching on August 10, 1973. Under Mr. Dupuy's testimony there can be no doubt about the fact that Dupuy-Busching is the general agent of Cotton Belt, having full authority to issue oral binders, that is to say, oral contracts of insurance and that they do it every day and that they also have full authority to issue endorsements upon oral requests and that this happens daily. He testified specifically that the memorandum of August 8, 1973, if received by Dupuy-Busching would bind the coverage contained in the memorandum.

After Cotton Belt refused to defend Smith Trucking in the state court wrongful death action, Smith Trucking brought in the court below its declaratory judgment action seeking initially to force Cotton Belt to furnish a defense. Before this case was tried in the court below the state court action came to trial and had to be defended by Smith Trucking at its own expense. That trial resulted in a verdict and judgment against Smith Trucking in the amount of $25,000. Smith Trucking then petitioned the court below for an order requiring Cotton Belt to satisfy that judgment and to reimburse Smith Trucking for all expenses incident to that litigation. The district court found that there was insurance coverage because Cotton Belt was bound by oral contract to insure Smith Trucking's nine tractors and nine trailers in use and that the garaging point had been successfully changed from Nicholson to Vicksburg before the accident occurred.

## II.

The first question raised on appeal is whether the trial court was correct in its factual determination that an oral contract bound Cotton Belt to insure the trailer in question. Applying the clearly erroneous standard, *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954), we conclude that the trial court properly found that at the time of the accident Cotton Belt, acting through Tate Agency and Dupuy-Busching, had agreed to insure the nine tractors and nine trailers then in use by Smith Trucking, a group of vehicles which clearly included the trailer involved in the accident.

An oral contract to insure is valid in Mississippi. *Southern Ins. Co. v. Ryder Truck Rental, Inc.*, 240 So.2d 283 (Miss. 1970), *McPherson v. McLendon*, 221 So.2d 75 (Miss.1969), *Canal Ins. Co. v. Bush*, 247 Miss. 87, 154 So.2d 111 (1963). The above cases hold that the general agent of an insurance company, such as Dupuy-Busching in this case, has very broad authority to act on behalf of its principal, the insurance company. Indeed it acts "in the stead of"

the insurance company.[1] With respect to the authority of the local soliciting agent, Tate Agency, Mr. Dupuy testified that under certain conditions that agency had authority to bind Cotton Belt. Under the circumstances of this case, Tate Agency was clearly the agent of Dupuy-Busching, the agent of Cotton Belt, the insurer in this transaction, and under these circumstances Tate Agency was *pro hac vice* the agent of Cotton Belt. *Bankers Fire and Marine Ins. Co. v. Dungan*, 240 Miss. 691, 128 So.2d 544 (1961); *Canal Ins. Co. v. Bush,* supra; Miss. Code § 83–17–1.[2] Under the facts of the case *sub judice* however we need not essay to assess precisely Tate Agency's authority acting solely to bind Cotton Belt because all of Tate Agency's actions in the premises were fully known to, acquiesced in and ratified by Dupuy-Busching. Tate Agency informed Dupuy-Busching of the need to obtain the coverage which Aetna was no longer willing to carry and it was Dupuy-Busching who then said "consider it bound". The trial court was authorized to find that the intention of all parties involved at that time was to provide that coverage for the nine tractors and nine trailers then being operated by Smith Trucking. Smith Trucking operated under that oral binder up until the policy was issued on August 8, 1973. The policy was mailed by Dupuy-Busching on August 8 to Tate Agency. It was never seen by Smith Trucking until sometime later after the accident when it requested to see the same. We need not determine whether or precisely when the policy took effect. Should it be that the policy never took effect because of non-delivery, the trailer in question was as determined by the district court clearly covered by the oral contract of insurance, and if it be that the policy had gone into effect prior to the accident then the trailer in question is clearly covered by the written policy.

While there was a factual question as to whether Smith Trucking had in use more than nine trailers, that question was conclusively resolved by the district court's finding.

■ Even if there had not been an oral agreement as found by the court below to insure the nine tractors and nine trailers then in use, the written policy suffices to insure the trailer in question because the parties clearly intended to insure Taylor Trailer T3244 (referred to here as Taylor because Johnny Smith so referred to it and because the record shows it was purchased from Taylor Machine Works, Inc.) despite

1. It so happens that in the case of *Southern Ins. Co. v. Ryder Truck Rental, Inc.,* 240 So.2d 283 (Miss.1970), Dupuy-Busching General Agency, Inc. of Jackson, Miss., was recognized by the court as general agent of the insurance company there involved with the full powers generally possessed by general agents of insurance companies. In the early case of *Rivara v. Queen's Insurance Co.,* 62 Miss. 720 (1885) quoted with approval in *Canal Ins. Co. v. Bush,* 247 Miss. 87, 154 So.2d 111 (1963) the Supreme Court of Mississippi said: *"An insurance agent clothed with authority to make contracts of insurance or to issue policies stands in the stead of the company to the assured. His acts and declarations in reference to such business are the acts and declarations of the company. The company is bound, not only by notice to such agent, but by anything said or done by him in relation to the contract or risk, either before or after the contract is made."* [Emphasis original].

2. "§ 83–17–1. Agent defined.
   Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect, or transmit any premium of insurance, or make or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request or by the employment of the insurance company, or of or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract. . . . " Miss.Code § 83–17–1.

the faulty listing on the application of "1969 Taylor full trailer R66T2628" in its place. The evidence disclosed that T2628 trailer appearing on the application and policy had been traded to Taylor Machine Works for a new 1973 trailer No. T3244, approximately six months before the policy was issued. Smith Trucking could not have intended to insure a trailer which it no longer owned and its listing on the application was a mistake, a simple oversight. Cotton Belt likewise could not have intended to insure a trailer which Smith Trucking no longer owned. The trial court correctly found that the parties intended to insure the newly acquired trailer. While normally the listing of a previously traded vehicle cannot operate to expand a liability policy to cover any vehicle which might eventually come into insured's possession, in this case the trailer involved in the accident was acquired long before the policy was obtained and was acquired directly in exchange for a trailer which was mistakenly listed. Thus the trailer in question was a member of an identifiable group of vehicles—the nine trailers then owned and in use. Significantly, there was no evidence that insuring the new trailer as opposed to the old trailer in any way increased the risks accepted by the insurance company when it agreed to insure the nine trailers. Given these circumstances, the failure to list Taylor Trailer T3244 by correct serial number was an oversight which qualifies under Mississippi law as a mutual mistake warranting a finding that the policy should be enforced in accordance with the true intention of the parties. *Johnson v. Consolidated American Life Ins. Co.*, 244 So.2d 400 (Miss.1971); *American Alliance Ins. Co. v. Alford*, 229 Miss. 855, 92 So.2d 191 (1957). *See also Hardware Indemnity Ins. Co. v. Sprouse*, 308 Ky. 332, 214 S.W.2d 407 (Ct.App.1948); *Gresham Petroleum Transport, Inc. v. Keystone Mut. Casualty Co.*, 228 N.C. 144, 44 S.E.2d 731 (1947). Because the intention

was to insure the new trailer the policy should be enforced.[3]

Cotton Belt vigorously asserts that *Maryland Casualty Co. v. Adams*, 159 Miss. 88, 131 So. 544 (1931) and *Hartford Accident & Indemnity Co. v. Lockhard*, 239 Miss. 644, 124 So.2d 849 (1960) should control this aspect of the case. Both of these decisions hold that an exclusion in a policy which precludes coverage for a vehicle when it is towing an uninsured vehicle is valid even when the agent of the insurance company knew when the policy was issued that the vehicle to be insured would be used to tow an uninsured trailer. The knowledge of the agent in both cases did not operate as a waiver of the policy exclusion.

Those decisions do not apply in this case because in both *Adams, supra,* and *Lockhard, supra,* the towed vehicle was unquestionably not insured and the only issue was whether estoppel or waiver could alter the fact of no coverage. In this case, however, the trial court found that the trailer involved in the accident was insured, thereby obviating application of the valid exclusion clause. *Adams* and *Lockhard* are also distinguishable because the insured in both cases had received the written policy at the time of the accident and was thereby apprised of the vehicles covered by the written policy. However, in the instant case, the policy had not been received by Smith Trucking.

### III.

█ The next question is whether the trial court properly concluded that the garaging point was changed from Nicholson to Vicksburg with respect to the trailer in question. Given the fact that on the afternoon of August 7, 1973, Tate Agency telephoned Dupuy-Busching that Tate Agency was issuing a memorandum changing the garaging point, plus the fact that there was only acquiescence and approval on the part

---

**3.** "Description is not of the same importance in automobile liability insurance as in fire and theft insurance, and in the former case recovery may be had notwithstanding an erroneous description if it clearly appears that the machine inflicting the injury was one intended by both parties to be insured." 1 Couch on *Insurance* 2d § 6.2, p. 238 "Mistake in Description", (2d ed. 1959).

of Dupuy-Busching, plus the execution of the memorandum by Tate Agency on the morning of August 8, 1973, confirming in writing this change of garaging point, plus the testimony of Mr. Dupuy that this memorandum was very clear and to the effect that if received it was binding upon Dupuy-Busching, and in effect that had the accident not occurred when it did an endorsement would have been issued in routine fashion by Dupuy-Busching changing the garaging point, the finding of the trial court that the garaging point had been effectively changed is amply supported.

### IV.

■ The law's wise requirement that oral contracts of insurance "must be established by clear and convincing evidence, full and clear proof, etc., and [that] it must be shown that each party understood its terms in the same light", 44 Am.Jur.2d, *Insurance* § 2040 is complied with in this case. Effler and Mrs. Weems "discussed the coverage that was needed", essentially if not precisely the same coverage which Aetna was refusing to renew, Mrs. Weems gave him a particular Cotton Belt policy number and told him he could "consider that policy under binder, effective June 25, 1973." And Smith Trucking "operated under that policy . . . or under that binder throughout the entire course of these events . . . until an actual policy was issued." Also when Tate Agency issued the insurance certificate to W. J. Runyan and Son, Inc. on August 7, 1973, it contained the Cotton Belt policy number (with scrivener's error). *See Liverpool & London & Globe Ins. Co. v. Hinton*, 116 Miss. 754, 77 So. 652 (1918) and *Southern Ins. Co. v. Ryder Truck Rental, Inc., supra.*

■ The court below was fully justified in finding that the unidentified lady in the office of Dupuy-Busching, with whom Mrs. Wilson of the Tate Agency by telephone handled the issuance of the insurance certificate for W. J. Runyan and Son, Inc. and the change in garaging point, was a person with authority to act on behalf of Dupuy-Busching. Significantly, Dupuy-Busching does not question her existence or her authority. When Mrs. Wilson would call Dupuy-Busching's number in Jackson, they would refer her to this lady. That happened "several times." This unidentified lady was familiar with the matters being discussed, and spoke as one having authority.

### V.

■ The remaining question is whether Tate Agency was properly dismissed from the third party complaint brought by Cotton Belt. Cotton Belt asserts that because the trailer involved was not properly identified on the application, any liability for the accident on the part of the insurance company must rest upon Tate Agency. This contention fails because of the correctness of the factual finding by the trial court that Cotton Belt, acting through Dupuy-Busching, intended to insure the trailer in question as one of the nine trailers in operation. There was no evidence that either Tate Agency or Dupuy-Busching exceeded authority in binding Cotton Belt to insure this trailer, nor was there any evidence that Tate Agency or Dupuy-Busching had in any way increased the risk of liability beyond that which Cotton Belt had intentionally assumed. Notably, Cotton Belt issued the written policy despite the absence of serial numbers of three of the insured trailers. This willingness to insure other trailers without serial numbers weakens the contention that Cotton Belt was injured by the mistaken listing of a serial number for the trailer involved in the accident. Accordingly, Tate Agency was properly dismissed from the third party complaint. The judgment of the district court is AFFIRMED.