PACIFIC INSURANCE COMPANY,
Plaintiff–Appellee,

v.

QUARLES DRILLING CORPORATION,
Defendant–Appellant,

v.

SWETT & CRAWFORD OF TEXAS,
INC., Defendant–Appellee.

No. 87–3708.

United States Court of Appeals,
Fifth Circuit.

Aug. 2, 1988.

Richmond M. Eustis, Charles A. Nunmaker, Monroe & Lemann, New Orleans, La., for defendant-appellant.

Robert B. Deane, Dana H. Beer, Chaffe, McCall, Phillips, Toller & Sarpy, New Orleans, La., for Pacific Ins. Co.

Ernest L. O'Bannon, New Orleans, La., for Swett & Crawford of Texas, Inc.

Before CLARK, Chief Judge, RUBIN and JONES, Circuit Judges.

CLARK, Chief Judge:

Quarles Drilling Corporation (Quarles) appeals from the grant of summary judgment which reformed an insurance policy issued to Quarles by Pacific Insurance Company (Pacific). We affirm.

I.

Early in 1983, Quarles contacted its insurance agents, Haas and Wilkerson, to procure hull and indemnity insurance for six drilling barges and worker's compensation and employers' liability insurance. Haas and Wilkerson contacted an insurance broker, Swett and Crawford, to obtain the insurance. During the ensuing months these parties exchanged correspondence and documents relating to the various insurance coverages.

On May 2, 1983, Swett and Crawford sent a telex to Haas and Wilkerson describing terms of the requested hull and indemnity insurance. The telex stated that "liability to crew and/or assureds' employees and cargo" was to be excluded. Based upon its communications with Swett and Crawford, Haas and Wilkerson prepared a

hull and indemnity insurance document for Quarles entitled "Barge Quotation." The quotation expressly excluded liability for injuries to crew and employees. The insurance supervisor for Quarles discussed this barge quotation in a memorandum she wrote to Quarles' president. The memorandum stated that, "H & W's quote contained all our P & I excluding crew coverage and pollution coverages, while B.M. & F.'s could contain our pollution coverage."

Swett and Crawford issued a binder for hull and indemnity insurance on July 26, 1983 naming Pacific Insurance Company as the insurer and Quarles as the insured. The binder described the coverage as "All risks of physical loss or damage and/or as per addendum attached." The addendum, under Item No. 13, provided "other conditions," including "protection and indemnity (excluding crew and/or insured's employees)." Pacific then issued its own binder for the hull and indemnity coverage for Quarles' drilling rigs. The binder contained an addendum with language identical to the Swett and Crawford addendum, which specifically excluded coverage for injuries of crew and employees.

On August 29, 1983, Pacific issued its hull policy No. P.I. 020860, providing coverage from July 15, 1983 until July 15, 1986. The policy was prepared by Swett and Crawford personnel, who did not strike or modify the clause providing liability coverage for crew and employees from the standard insurance form nor did they write in any exception or exclusion for crew and employee liability. Even though the policy's language included coverage for the crew, Haas and Wilkerson sent a letter to Quarles' insurance supervisor on November 18, 1983, which letter referred to the Pacific policy and stated that it provided "coverage on your [drilling] barges up to 80% of sound insurable value as well as protection and indemnity excluding crew."

In the spring of 1984, Swett and Crawford, while rearranging Pacific's exposure under its policies, notified Haas and Wilkerson that the Pacific policy would be cancelled and a new policy with the same terms and conditions would be issued. On July 15, 1984, the new Pacific policy No. 62968 was issued to replace the former policy, No. P.I. 020860. Like the prior policy, the new policy contained a clause providing crew and employees' liability coverage and no exclusion or exception in this regard.

On August 27, 1985, Haas and Wilkerson, acting on behalf of Quarles, wrote a letter to Swett and Crawford requesting that certain items be clarified. In particular, they made the following request:

Please issue an endorsement effective inception specifically excluding crew liability. Since it was not the intention to cover crew and the form provides automatic coverage a specific exclusion is in order to prevent automatic involvement of "other insurance" clause.

In response to the August 27, 1985 letter and a subsequent phone conversation, Swett and Crawford sent a telex to Haas and Wilkerson stating that, "it is specifically understood and agreed that this insurance does not cover any liability, actual or contingent, for claims in respect of personal injury and/or bodily injury...." On October 1, 1985, Swett and Crawford issued an endorsement with an effective date of July 15, 1984, providing an amendment which excluded personal injury claims of crew and employees, from the inception of the policy.

During this same time, Quarles had also procured separate workers' compensation and employer's liability insurance. Quarles purchased the first such policy from National Union Fire Insurance Company, providing coverage from July 15, 1983 to July 15, 1984. During the term of the National Union policy, all of Quarles' crew and employee personal injury claims were submitted to National Union.

For the policy year July 15, 1984 until July 15, 1985, Quarles procured workers' compensation and employee liability insurance from Transit Casualty Company. During 1984 and 1985, the crew and employee injury claims were handled by Transit Casualty. On December 3, 1985, however, Transit Casualty Company was declared insolvent. On March 10, 1986, after

Quarles received notice that Transit Casualty would no longer provide coverage, Quarles tendered the defense of several personal injury claims to Pacific.

Pacific filed this action seeking a declaratory judgment that its policy did not provide personal injury coverage for crew members. The district court granted Pacific's motion for summary judgment, holding that because the parties clearly intended to exclude coverage for injuries to crew members the Pacific policy should be reformed to reflect the mutual intent of the parties. Quarles appeals.

## II.

The district court properly reformed the Pacific insurance policy to exclude liability coverage for Quarles' crew and employees. Summary judgment is appropriate if it appears from the pleadings and supporting documents that no genuine issue of material fact exists and such facts entitle the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c). In Louisiana, a party seeking reformation carries the burden of proving, by clear and convincing evidence, that reformation is warranted. *Lynal, Inc. v. Patrick Petroleum Co.*, 593 F.Supp. 1325, 1327 (W.D.La.1984). We must ascertain that no genuine issue as to any material fact exists under plaintiff's higher than normal burden of proof. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Reformation is an equitable remedy whereby a court may reform a contract to reflect the intentions of the parties. An insurance policy may be reformed where, because of mutual error, fraud, or mistake by the agent, draftsmen, or scrivener, the policy does not conform to the original intention of the parties. *Leitz v. Wentzell*, 461 So.2d 473, 476 (La.App.1984); *Kolmaister v. Connecticut General Life Ins. Co.*, 370 So.2d 630, 632 (La.App.1979). Reformation of a policy may alter the "amount of insurance, the term and duration of the risk, the property or interest covered by the policy, or the name of the person involved and the ownership of the property." *Phoenix Indemnity Co. v. Marquette Casualty Co.*, 320 F.2d 486, 492–3 (5th Cir.1963).

■ There is no genuine issue of material fact that the parties intended to exclude coverage for personal injuries to crew and employees. The summary judgment material produced by Pacific clearly and convincingly shows that Pacific and Quarles intended that the Pacific hull and indemnity policies in question should exclude coverage for personal injuries of crew and employees. The insurance agents for Quarles issued a "Barge Quotation" which described the desired insurance as excluding liability for injuries to crew. Quarles' insurance supervisor advised Quarles' president that the barge policy being negotiated did not include coverage for injuries to crew. The Swett & Crawford binder and the Pacific binder contained identical language specifying that coverage for injuries to crew was not to be included in the policy. Each of these documents clearly shows neither party expected the Pacific policy to include coverage for injuries to the crew.

■ Quarles contends that any mistake committed in issuing the Pacific policy was strictly a unilateral mistake by Swett and Crawford acting on behalf of Pacific. The undisputed facts show without the slightest equivocation that in this case that simply isn't so. This was not a contract of adhesion as might be found in a typical purchase of insurance coverage. Here, the purchaser was a sophisticated buyer. Quarles' insurance supervisor, agent, broker, and the insurer cooperated in calculating how to best provide complete coverage for the risks Quarles anticipated through a series of policies that were tailored to give full coverage at minimal premium. Thus, the negotiation and the acceptance of the policy by the insured, as clearly evidenced by the internal company memorandum, introduced the element of mutuality to what might under other facts represent a unilateral mistake by the insurance company.

The district court judgment is

AFFIRMED.