917 F.2d 199
 MOTORS INSURANCE COMPANY, Plaintiff-Appellee,
v.
BUD'S BOAT RENTAL, INC.,
Defendant-Counter-Claimant-Appellant, Cross-Appellee,
v.
MOTORS INSURANCE COMPANY, et al., Counter-Defendants-Appellees.
CERTAIN UNDERWRITERS AT LLOYDS, Counter-Defendant and
Third-Party-Defendant-Appellee,
v.
TENNESSEE GAS PIPELINE COMPANY, Counter-Defendant
Third-Party-Plaintiff-Appellant.
 No. 89-3679.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 19, 1990.
 
 William D. Cass, Courtenay, Forstall, Guilbault, Hunter & Fontona, Terrence C. Forstall, New Orleans, La., for Bud Boat.
 James B. Doyle, Lafayette, La., for Tennessee Gas.
 William B. Gibbens, III, Patricia Nalley Bowers, Gibbens & L'Hoste, New Orleans, La., for Motors Ins. Co.
 Sheryl Story, New Orleans, La., for Travelers Ins. Co.
 Edward Koehl, Jr., Wayne G. Zeringue, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for T. Banker Smith Sons, Inc. and Travelers.
 James K. Carroll, Susan Johnson Burkenstock, Peter B. Tompkins, Gelpi, Sullivan, Carroll & LaBorde, New Orleans, La., for Muller-Young Assoc., Inc.
 J. Frederick Kessenich, Emmett, Cobb, Waits & Kessenich, New Orleans, La., for American Home Assur. Co.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before RUBIN, GARWOOD and HIGGINBOTHAM, Circuit Judges.
 ALVIN B. RUBIN, Senior Circuit Judge:
 
 
 1
 A vessel owner and the company to which the vessel had been chartered appeal from a declaratory judgment that neither the vessel's marine underwriter nor its insurance broker bear any liability for claims arising from an injury suffered by a passenger on the vessel. The district court held that the insurance policy, which covered named vessels but did not list the vessel involved, did not cover the vessel and that the broker did not breach its fiduciary duty in failing to obtain such coverage. The district court dismissed without prejudice the owner's claims that the charterer's negligence caused the injury. We affirm the judgment in favor of the insurers and, in the absence of any appeal raising the issue of the charterer's rights or liabilities in the event that no insurance coverage was provided, likewise affirm the judgment of dismissal without prejudice.
 
 I.
 
 2
 Bud's Boat Rental, Inc., a Louisiana corporation, operated a fleet of oil field vessels in the coastal and inland waters of Louisiana. Among its vessels was a "jo-boat" used to transport passengers and cargo, the M/V MR. BOB. Bud's had entered into a charter party for this vessel with Tennessee Gas Pipeline Company.
 
 
 3
 On the morning of December 11, 1987, the M/V MR. BOB, captained by Terry Landry, an employee of Bud's, picked up three passengers at the A-Z Terminal dock in Venice, Louisiana for transport to a job site on the west side of the Mississippi River. The passengers were Paul N. Use and Harry Dupre, both employees of T. Baker Smith & Son, a Louisiana corporation surveying an area where Tennessee Gas was to lay a pipeline, and Kenneth Byrd, a Tennessee Gas supervisor. Captain Landry advised Byrd that he planned to follow the river route to the job site, which was slightly longer than the alternate bayou route, in order to avoid the shallow waters of the bayou in which the M/V MR. BOB had run aground the previous day. Byrd said that he preferred to take the bayou route, so Captain Landry complied.
 
 
 4
 As the M/V MR. BOB turned from the river into a small canal on the bayou route, she ran aground in a shallow, unmarked area. The impact caused Use to be thrown to the floor. Since Use had suffered no apparent injuries, the M/V MR. BOB continued its trip to the job site and left him there. A short time later, however, Tennessee Gas directed the M/V MR. BOB by radio to return to the job site to convey Use, who was complaining of pain in his groin, to a doctor. That afternoon, Bud's obtained handwritten, signed statements describing the grounding incident from Landry and Use; these were subsequently forwarded to Bud's insurance broker. Use was examined by a doctor on December 11th and was returned to full duty the next day.
 
 
 5
 Bud's heard nothing further from Use until May 10, 1988, when it received notice that he and his wife had filed a suit in state court seeking damages for back injuries to Use allegedly caused by the grounding of the M/V MR. BOB. In addition to Bud's, the suit named T. Baker Smith & Son, Tennessee Gas, and Motors Insurance Company, the underwriter of Bud's protection and indemnity ("P & I") policy, as defendants.
 
 
 6
 Bud's immediately notified its insurance broker, Muller-Young & Associates, of the suit. Motors Insurance and Lloyd's of London, the excess underwriter on the policy, denied coverage of all claims arising from the grounding of the M/V MR. BOB.
 
 
 7
 For several years before December 11, 1987, Bud's had been experiencing financial difficulty. In order to minimize its expenses, Bud's had developed a practice of removing from insurance coverage those vessels that were unemployed for a significant period of time. Bud's would notify Muller-Young by telephone that a given vessel should be removed from the schedule of insured vessels; Muller-Young would then arrange for the vessel to be deleted from the vessels named in the policy and for the unearned part of the premium to be credited to Bud's. When the vessel returned to work, Bud's simply reversed the process with another phone call. At any given time, therefore, one or more of the vessels in Bud's fleet might not be listed on the policy schedule of insured vessels. Susan Luckie, a Bud's employee, usually handled these communications as well as other insurance matters.
 
 
 8
 This was the situation on September 1, 1987 when, in view of the impending expiration of Bud's policy, Muller-Young submitted a proposal to several different underwriters to renew Bud's hull and P & I coverages. At that time the M/V MR. BOB was not on the list of scheduled vessels, having been deleted from the expiring policy on May 5, 1987.
 
 
 9
 On November 11, 1987, however, Luckie informed Muller-Young that coverage should again be provided for the M/V MR. BOB. Yet on November 23, when Muller-Young submitted an amended proposal to Motors Insurance, the attached schedule listed only other vessels and made no reference to the M/V MR. BOB. On the basis of this proposal, Motors Insurance submitted a quote, which Muller-Young conveyed to Luckie by telephone. Bud's approved the renewal, which became effective December 1, 1987.
 
 
 10
 On December 2, 1987, Muller-Young sent Bud's and the charterers named as additional assureds certificates of insurance with attached schedules of covered vessels (which did not list the M/V MR. BOB). On December 9th, Luckie met with Marcus Dunn of Muller-Young, to review in detail each vessel insured under the policy schedule and the premium per vessel. Five jo-boats were listed on the schedule, but the M/V MR. BOB was not among them. Luckie made a down payment on the insurance premium. At no time did she compare her list of working vessels to the policy schedule or request that the M/V MR. BOB be added.
 
 
 11
 On March 18, 1988, after the Use injury had occurred, one of Bud's customers noticed that the M/V MR. BOB was not one of the scheduled vessels on the certificate of insurance that he had received, and so informed Luckie. She thereupon advised Muller-Young that two jo-boats, the M/V MR. BOB and the ROBBIE, should have been listed on the policy schedule from its inception, while another jo-boat, the WALTER, was scheduled although it should not have been. She directed Muller-Young to procure the necessary changes retroactive to the inception of the policy.
 
 
 12
 Dunn proposed to Motors Insurance that they amend the policy schedule retroactively, subject to a warranty of "no known or reported losses as of March 18, 1988." Dunn testified that he volunteered this warranty language because he knew that no underwriter would agree to retroactive coverage without an express exclusion of prior known or reported losses. Neither Muller-Young nor Motors Insurance ever informed Bud's about the inclusion of this warranty. Acting in reliance on the warranty, Motors Insurance agreed to amend the schedule retroactively, charging an additional premium of $4500 per vessel for the ROBBIE and the M/V MR. BOB and crediting the $4500 premium originally paid for the M/V WALTER.
 
 
 13
 Motors Insurance filed this action seeking a declaratory judgment that it had provided no coverage for any claims arising out of the grounding of the M/V MR. BOB on December 11, 1987. This suit was subsequently consolidated with Bud's action filed in the same court seeking exoneration from liability. The Uses' state court action was stayed pending resolution of the issues before the district court. After a trial on the merits, the district court entered judgment in favor of Motors Insurance. The court dismissed all other claims and counterclaims, including a claim by Tennessee Gas, which was dismissed without prejudice, that it was not liable for navigational error as a time charterer of the vessel. Meanwhile, the Uses had settled their claims for $250,000, which was paid by Bud's, Tennessee Gas, T. Baker Smith & Son and its compensation carrier, The Travelers Insurance Company.
 
 
 14
 Bud's contends that it is entitled to complete indemnity by Motors Insurance for all losses arising from the grounding of the M/V MR. BOB. In the alternative, it asserts that Muller-Young breached its fiduciary duty by failing to procure the requested insurance coverage or to notify Bud's of the absence of coverage. Tennessee Gas joins Bud's claims against Motors Insurance and Muller-Young and also contends that as a time charterer it was not liable for injury resulting from navigational error aboard the M/V MR. BOB.
 
 II.
 
 15
 Insurance coverage under a P & I policy extends only to the liability the insured incurs in its capacity as an owner, operator, or charterer of the vessel/s named in the policy.[1] Since the Motors Insurance P & I policy contains no mention of the M/V MR. BOB, that vessel was not covered.
 
 
 16
 Because a contract of marine insurance is a maritime contract,[2] federal admiralty law applies to its interpretation. Bud's relies, however, on Louisiana state law to seek equitable reformation of its insurance policy. The Supreme Court has held that disputes over marine insurance should be resolved in accordance with relevant state law absent a well-established federal maritime rule of decision.[3] The Fifth Circuit has previously applied Louisiana law to reform a maritime hull and indemnity policy.[4] No party contends that a federal maritime rule of decision regarding policy reformation is applicable. We therefore proceed to apply state law.
 
 
 17
 Under the doctrine of equitable reformation, Louisiana law permits a court to reform the written language of an insurance policy to conform with the original intentions of the parties. The party seeking reformation bears the burden of proving, by clear and convincing evidence, that a mutual mistake has been made.[5] Policies should also be reformed if they fail to reflect the mutual intentions of the parties due to a unilateral mistake made by the insurer or his agent in drafting the agreement.[6] Reformation is warranted only, however, to embody the parties' mutual intent; otherwise, the courts would, in effect, be rewriting the contract.[7] In order for Bud's to justify reformation of its P & I policy, therefore, it must prove that Motors Insurance shared its intention to insure the M/V MR. BOB. This it has failed to do.
 
 
 18
 Determination of intent is a question of fact for the district court, which this court can reverse only if clearly erroneous.[8] The district court found no evidence that Motors Insurance was apprised of Bud's practice of periodically removing and returning its jo-boats from coverage according to their work schedules. Instead, Motors Insurance was simply presented with a list of vessels for which Bud's desired coverage. It was not informed whether or not this list included all the vessels owned by Bud's. In previous cases in which an insurer has contracted to insure a client's entire "fleet" of vehicles, the courts have sometimes reformed the policies involved to give effect to those intentions.[9] But there is no evidence that Motors Insurance contracted to insure all of Bud's fleet. As the district court found, with ample support in the record, Motors Insurance intended simply to provide coverage for the vessels listed on its policy schedule, which did not include the M/V MR. BOB.
 
 
 19
 Muller-Young, on the other hand, did know about Bud's practice of removing vessels from and returning them to coverage. Muller-Young's knowledge, however, cannot be imputed to Motors Insurance unless an agency relationship existed between the two.[10] Under Louisiana law, an insurance broker is generally deemed to be the agent of the insured rather than the insurer.[11] Whether an agency relationship exists is a factual determination to be made in consideration of the totality of the circumstances.[12] A broker who solicits business for more than one insurer,[13] who has no power to bind the insurer without permission,[14] or who is asked by the client to procure coverage wherever possible at the best price,[15] is not the agent of the insurer, even if he uses application forms or advertising decals with the insurer's name. Since Muller-Young could--and in fact previously did--obtain insurance for Bud's from another underwriter and could not bind Motors Insurance without its approval, the district court's determination that Muller-Young was either acting as an independent broker or as the agent of Bud's has ample evidentiary support. Muller-Young's knowledge of Bud's practice in insuring its jo-boats therefore cannot be imputed to Motors Insurance.
 
 
 20
 Bud's argues that the district court erred in requiring a demonstration of Motors Insurance's intent to insure the M/V MR. BOB by clear and convincing evidence, rather than by a preponderance of the evidence. Bud's points to several cases that have applied a preponderance-of-the-evidence standard when reformation of the policy would not subject the insurer to a substantially greater risk than the policy as drafted.[16] We need not consider the applicability of those cases in this context, however, because Bud's has adduced no evidence. Applying a lower standard of proof would not change the result.
 
 
 21
 Bud's also contends that the March 18, 1989 amendment to its hull and P & I policies, adding the M/V MR. BOB and the ROBBIE to the schedule of covered vessels retroactive to policy inception, effectively provides it with coverage for claims arising from the M/V MR. BOB grounding incident on December 11, 1987. The plain language of the warranty clause excludes the grounding incident of December 11th. As the district court found, all concerned treated the grounding as giving rise to a potential loss from the day of its occurrence. Bud's itself reported the incident to Muller-Young. Moreover, no reasonable underwriter would have agreed to insure the M/V MR. BOB, which had been involved in an accident, for the same premium it charged for Bud's other jo-boats unless all claims arising from the accident were excluded from coverage. We therefore affirm the district court's determination that the March 18th amendment does not provide coverage for claims arising out of the grounding of the M/V MR. BOB.
 
 III.
 
 22
 Bud's contends, alternatively, that Muller-Young breached its fiduciary duty to Bud's by failing to procure appropriate insurance for the M/V MR. BOB or to so notify Bud's. Louisiana law allows a client to recover for loss resulting from the failure of an insurance agent to obtain coverage if the client can prove: 1) an undertaking or agreement by the insurance agent to procure insurance; 2) failure of the agent to use reasonable diligence to obtain insurance and failure to notify the client promptly of the absence of coverage; and 3) actions by the agent which warranted the client's assumption that he was insured.[17] On the other hand, the client is himself considered responsible for adequately advising the agent of the coverage needed and for reading the clear provisions of the insurance policy.[18] In the present case, failure to insure the M/V MR. BOB might be attributed to errors committed by both Muller-Young and Bud's. Muller-Young did not include either the M/V MR. BOB or the ROBBIE on the policy schedule, despite notification from Bud's three weeks earlier that coverage was required. For its part, Bud's failed to bring that omission to Muller-Young's attention, despite Muller-Young's oral review of the vessels to be covered and its presentation to Bud's of the policy schedule itself. Muller-Young did, however, notify Bud's of the scope of its insurance coverage; Bud's simply failed to read the policy. The district court found that, given the constant flux of the vessels subject to coverage, Bud's, being directly involved in and responsible for the day-to-day operations of its vessels, had direct and specific knowledge as to which vessels were working. Bud's was therefore in a better position than Muller-Young to determine whether or not it had properly insured all the working vessels. Since Bud's chose to engage in the practice of moving vessels on and off coverage to reduce its insurance payments, it behooved its employees to check the policy schedules carefully. While Muller-Young's performance of its professional obligations was perhaps less than exemplary, the district court's determination that failure to insure the M/V MR. BOB was Bud's fault rather than Muller-Young's is supported by the record.
 
 
 23
 There is like support for the district court's holding that Muller-Young's approval, without Bud's knowledge, of the warranty clause in the March 18th amendment did not constitute breach of a fiduciary duty. The district court found that no reasonable underwriter would have provided coverage for the M/V MR. BOB at the same premium without the exclusionary clause; such clauses were customary business practice when agreeing to retroactive coverage. Given the absence of alternative coverage, Muller-Young's approval of the clause was not the cause in fact of any harm sustained by Bud's. Under Louisiana law, negligence by an insurance agent is not actionable unless it constitutes the cause in fact of the harm for which recovery is sought.[19] Muller-Young's approval of the warranty clause therefore provides no grounds for a claim of breach of fiduciary duty.
 
 
 24
 For the reasons stated above, the judgment of the district court is AFFIRMED with regard to all claims by Bud's against both Motors Insurance and Muller-Young.
 
 IV.
 
 25
 After the district court had rendered its judgment, and during the pendency of this appeal, the Uses settled their claims for $250,000, to which Bud's contributed $50,000, Tennessee Gas $100,000, and T. Baker Smith $100,000. Bud's has not appealed the judgment dismissing Tennessee Gas, nor has Motors Insurance. While Tennessee Gas has filed an appeal, it asserts only that the judgments in favor of Motors Insurance and Muller-Young be reversed and that, thereafter, it recover from these parties. Since we affirm these judgments, there is no reason to consider the possible negligence of Tennessee Gas.
 
 
 
 [1]
 Motes v. Hugh Eymard Towing Co, No. 87-4394, 1989 WL 1843 (E.D.La. Jan. 9, 1989); Marathon Oil Co. v. Mid-Continent Underwriters, 786 F.2d 1301, 1303 (5th Cir.1986); Wedlock v. Gulf Mississippi Marine Corp., 554 F.2d 240, 242 (5th Cir.1977); Lanasse v. Travelers Ins. Co., 450 F.2d 580, 583-84 (5th Cir.1971), cert. denied 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972)
 
 
 [2]
 Insurance Co. v. Dunham, 78 U.S. (11 Wall) 1, 20 L.Ed. 90 (1871)
 
 
 [3]
 Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955)
 
 
 [4]
 Pacific Ins. Co. v. Quarles Drilling Corp., 850 F.2d 1087 (5th Cir.1988)
 
 
 [5]
 Many v. Hartford Accident & Indem. Co., 505 So.2d 929 (La.App. 2d Cir.1987); Staten v. Security Indus. Ins. Co., 414 So.2d 1328, 1332 (La.App. 2d Cir.1982); Rougeau v. State Farm Mutual Automobile Ins. Co., 262 So.2d 803, 806 (La.App. 3d Cir.1972)
 
 
 [6]
 Staten, 414 So.2d at 1333; Smith Trucking, Inc. v. Cotton Belt Ins. Co., 556 F.2d 1297 (5th Cir.1977)
 
 
 [7]
 Leitz v. Wentzell, 461 So.2d 473, 476 (La.App. 5th Cir.1984), writ denied 462 So.2d 1267 (La.1985); Billiot v. Sentry Ins., 366 So.2d 1017 (La.App. 1st Cir.1978), writ denied 368 So.2d 125 (La.1979); Stacy v. Petty, 362 So.2d 810 (La.App. 3d Cir.1978); Green v. SHRM Catering, Inc., 710 F.Supp. 174 (W.D.La.1987)
 
 
 [8]
 Paragon Resources, Inc. v. National Fuel Gas Distribution Corp., 695 F.2d 991 (5th Cir.1983)
 
 
 [9]
 Smith Trucking, 556 F.2d 1297 (court reformed policy to substitute serial number of company's truck for one which company no longer owned); Geo. D. Geddes Undertaking and Embalming Co. v. Home Accident Ins. Co., 172 La. 598, 134 So. 905 (1931)
 
 
 [10]
 Sam Broussard Trucking Co. v. American Southwest Underwriters Corp., 544 So.2d 1276 (La.App. 4th Cir.), writ denied 548 So.2d 1247 (La.1989)
 
 
 [11]
 Trahan v. Bailey's Equipment Rentals, Inc., 383 So.2d 1072 (La.App. 3d Cir.), writ denied 390 So.2d 1342 (La.1980)
 
 
 [12]
 Tiner v. Aetna Life Ins. Co., 291 So.2d 774 (La.1974) (broker who solicited door-to-door and incorrectly filled out application form for elderly couple held to be agent of insurer)
 
 
 [13]
 Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d 728, 824 (La.1973)
 
 
 [14]
 Gulf Wide Towing, Inc. v. Associated Ins. Managers, 563 So.2d 432 (La.App. 1st Cir.1990); Britten v. Payne, 381 So.2d 855 (La.App. 1st Cir.), writ denied 384 So.2d 800 (La.1980)
 
 
 [15]
 Ackel v. Mid-South Underwriters, Inc., 377 So.2d 496 (La.App. 3d Cir.1979), writ denied 378 So.2d 1389 (La.1980)
 
 
 [16]
 Green v. SHRM Catering, Inc., 710 F.Supp. 174, 178 (W.D.La.1987); Bonadona v. Guccione, 362 So.2d 740, 744 (La.1978); Richard v. U.S. Fidelity and Guaranty Co., 247 La. 943, 175 So.2d 277 (1965)
 
 
 [17]
 Porter v. Utica Mut. Ins. Co., 357 So.2d 1234 (La.App. 2d Cir.1978); see Chandler v. Jones, 532 So.2d 402, 405 (La.App. 3d Cir.1988); Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d 728 (La.1973)
 
 
 [18]
 Smith v. Millers Mut. Ins. Co., 419 So.2d 59, 65 (La.App. 2d Cir.), writ denied 422 So.2d 155 (La.1982); Kieran v. Commercial Union Ins. Co., 271 So.2d 889, 892 (La.App. 4th Cir.1973)
 
 
 [19]
 Offshore Prod. Contractors v. Republic Underwriters Ins. Co., 910 F.2d 224 (5th Cir.1990)