362 So.2d 810 (1978)
Gus STACY, Jr., et al., Plaintiffs-Appellees,
v.
H. D. PETTY et al., Defendants-Appellants,
George W. Cline, III, et al., Third-Party Defendants-Appellants.
No. 6614.
Court of Appeal of Louisiana, Third Circuit.
August 4, 1978.
*811 Brame, Bergstedt & Brame, David A. Fraser, Lake Charles, for third party defendant and third party plaintiffs-appellants.
Plauche, Smith, Hebert & Nieset, Reid K. Hebert, Lake Charles, for defendant-appellees.
Burton & Nichols by James K. Nichols, DeRidder, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
GUIDRY, Judge.
The above numbered and entitled matter was consolidated for trial in the district court with Bituminous Insurance Company, et al v. H. D. Petty, et al, 362 So.2d 815 (La.App. 3rd Cir. 1978), our Docket No. 6613. These cases remain consolidated on appeal and we decide both of these cases today. The facts and law are common to each case.
These consolidated cases arise out of a three-vehicle accident which occurred at approximately 11:00 A.M., January 8, 1974 on *812 Louisiana Highway 27 at its intersection with Newlin Cemetery Road in Beauregard Parish. The vehicles involved in the accident were:
(1) a 1966 International tractor-trailer log truck owned by H. D. Petty and which was being operated by him in a northerly direction on Highway 27;
(2) a 1972 Ford tractor-trailer log truck owned by McLeod Brothers General Contractors which was being driven in a southerly direction on Highway 27 by its employee, Ocie Pharris; and
(3) a 1973 Plymouth automobile owned and operated by Gus Stacy, Jr., that was in the process of exiting from Highway 27 at the time of the accident.
The instant suit was originally brought by Gus Stacy, Jr. and his collision insurer, United States Fidelity & Guaranty Company, against H. D. Petty and his public liability insurer, Southeastern Fidelity Insurance Company (Southeastern), seeking recovery for personal injuries and property damage occasioned as a result of the accident.
In Suit No. 6613, McLeod Brothers General Contractors and its collision insurer, Bituminous Insurance Company seek recovery of property damage sustained in the accident from H. D. Petty, Gus Stacy, Jr., and their respective insurers, Southeastern and United States Fidelity & Guaranty Company.
Defendants in both suits filed answers generally denying liability to plaintiffs and alternatively alleging contributory negligence as a bar to plaintiffs' recovery. Southeastern further answered, admitting the issuance of a policy of insurance in favor of H. D. Petty, but specifically denied coverage for the accident under the terms of said policy on the basis of an exclusionary provision contained therein which purported to exclude coverage while the Petty vehicle was being used for towing a trailer that was not also insured by Southeastern.
Petty then filed a third party demand against the Cecil R. Middleton Insurance Agency, Inc.[1] (Middleton), the insurance agency from which he had acquired the Southeastern policy, and its errors and omissions insurer, California Union Insurance Company (California Union). In this demand, Petty sought recovery of all damages which he might incur as a result of suits filed against him, alleging negligent omission on the part of Middleton in its failure to procure the desired type of insurance on his vehicle.
Southeastern was also made an additional third party defendant by way of a supplemental and amending third party petition in which Petty alternatively sought reformation of the policy of insurance to provide coverage for the claims asserted against him.
Middleton and California Union, by way of third party demand, sought indemnity and/or contribution along with costs, expenses and attorney's fees from Southeastern and its agent, Mid-South Underwriters, Inc. (Mid-South), the company that actually issued the Southeastern policy.
Southeastern filed a motion for summary judgment which was subsequently denied by the district court.
Prior to trial, a compromise agreement was reached resulting in the dismissal, with prejudice, of all claims of the original plaintiffs in both suits, reserving, however, all incidental demands. Southeastern and California Union contributed the sums of $7,583.98 and $7,583.97, respectively to the settlement. It was stipulated that the accident was caused solely by the negligence of H. D. Petty.
The parties further stipulated:
"(1) If Southeastern is found to have coverage in favor of Mr. Petty by final judgment, it will reimburse California the sum paid by California toward settlement;

*813 (2) If, by final judgment, Southeastern if found to have no coverage, and H. D. Petty is entitled to his third party demand against Middleton and California, California will reimburse Southeastern the sum paid by Southeastern toward settlement, unless it is found to be entitled to indemnification or contribution from either or both Mid-South and Southeastern, in which event the final judgment will dictate the result; and
(3) If, by final judgment, Southeastern has no coverage, and H. D. Petty is not entitled to his third party demand against Middleton and California, H. D. Petty will reimburse both Southeastern and California the sums advanced by them to accomplish the settlement."
The remaining parties then proceeded to trial which was limited to the issue of coverage under the Southeastern policy and the issues raised in the various third party demands.
The record reflects no genuine dispute as to the following facts:
In September of 1972, H. D. Petty desired to obtain liability insurance which would provide coverage for vehicular equipment to be used for hauling logs. Petty, either personally or through his wife, contacted the Middleton agency in DeRidder, Louisiana for this purpose. The Pettys had previously dealt with the Middleton agency concerning insurance on their private passenger vehicles. However, the Pettys were informed that the particular type of insurance which was now desired was not available through the company which had previously insured their vehicles. They were advised by a representative of Middleton that a company would be found that would provide the insurance.
An application for insurance on behalf of H. D. Petty, dated September 14, 1972, was completed by an employee of Middleton and submitted to Mid-South, which is an agent for certain surplus line companies including Southeastern. At the time of this application, Petty owned a 1966 International truck to which he had attached a 1969 Frost trailer. This trailer is what is commonly known in the logging industry as a "pole trailer". The trailer had been welded and bolted to the 1966 International truck.[2]
The record reflects that Petty was desirous of obtaining coverage for the entire tractor-trailer combination. However, the application which was submitted by Middleton to Mid-South only listed the 1966 truck. No mention was made in the application of the 1969 trailer.
In response to the foregoing application, a policy of insurance, having an effective date of September 14, 1972, was issued in favor of Petty by Southeastern, the policy being issued out of Mid-South's office. The only vehicle described in the policy was the 1966 "International Log Truck". In a space designated for "Optional Equipment Declared at Time of Application" the notation "Std. Eqpt." appeared. In a space provided for "purpose for which the automobile is to be used", the entry "Hauls Logs" was made.
The Southeastern policy was subsequently renewed for a period of one year effective September 14, 1973 and was in full force and effect at the time of the accident giving rise to these suits. At the time of the accident, the 1969 Frost trailer was still attached to Petty's 1966 truck. The policy contained the following exclusionary provision:
"This part does not apply:
(c) under coverages A and B, while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company;. . ."
*814 After trial on the merits, the trial judge, in written reasons, concluded that no coverage was provided by the Southeastern policy because of exclusion "(c)", supra. The trial judge, however, determined that Petty was entitled to judgment on his third party demand against Middleton and California Union. In this latter regard, the trial judge found that the Pettys had sufficiently informed the Middleton agency concerning his intended logging operations, and that Middleton had breached its contractual obligation to Petty in that it failed to describe both the tractor and trailer in the application which was originally submitted to Mid-South.
Accordingly, judgment was rendered by the district court in favor of Petty and against Middleton and California Union in the amount of $15,167.95, subject to a $1,000.00 deductible under the California Union policy and to a credit of $15,167.95 previously paid by California Union and Southeastern to plaintiffs. Pursuant to the stipulation previously entered into between the litigants, judgment was rendered in favor of Southeastern and against California Union in the sum of $7,583.98. The various third party demands against Mid-South and Southeastern were dismissed. Middleton and California Union were cast for all costs.
Middleton and California Union have appealed from the judgment of the district court, contending (1) that the Southeastern policy provided coverage to Petty; or, (2) the policy should be reformed to provide coverage for Petty; or, (3) that Southeastern is now estopped from denying knowledge that a trailer was used with Petty's truck because of an "investigation charge" of $15.00 which was received by its agent, Mid-South. Further, appellants contend that, if there is determined to be no coverage under the Southeastern policy and if the policy is not reformed to provide coverage, that Middleton was not guilty of any negligence. Petty has not appealed from that portion of the judgment rejecting his third party demand against Southeastern for reformation of the policy.
We initially consider appellants' contention that the Southeastern policy provided liability coverage to Petty.
It is well settled that an insurance policy is a contract between the insured and insurer, and as such has the effect of law on the parties. LSA-C.C. art. 1901; Fontenot v. New York Life Insurance Co., 357 So.2d 1185 (La.App. 3rd Cir. 1978, writ refused); Southern States Masonry Company, Inc. v. Mission Insurance Company, 353 So.2d 307 (La.App. 1st Cir. 1977, writ refused); Cormack v. Prudential Insurance Company of America, 259 So.2d 340 (La.App. 4th Cir. 1972, writ refused). It is equally well settled that in the absence of a conflict with statutory law or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose reasonable conditions upon their obligations. Such provisions must be given effect as written. Oceanonics, Inc. v. Petroleum Distributing Company, 292 So.2d 190 (La.1974); Fontenot v. New York Life Insurance Co., supra.
A review of Louisiana jurisprudence indicates that a clause in an insurance contract excluding coverage when the insured vehicle is towing any trailer owned or hired by the insured is a valid and enforceable clause. Alphonse v. W. M. Kinner Transport Co., 452 F.2d 700, certiorari denied 406 U.S. 958, 92 S.Ct. 2061, 32 L.Ed.2d 344. See also Brady v. American Insurance Company, 198 So.2d 907 (La.App. 4th Cir. 1967) and cases therein cited.
The record clearly shows that at the time of the accident, Petty's tractor-truck was being used for the towing of a trailer which was owned by him and not covered by like insurance in the company. Under the facts presented, the clause in question clearly excluded any coverage under the Southeastern policy.
We find appellants' second contention that the Southeastern policy should be reformed to provide coverage equally without merit. Although an insurance contract is subject to reformation if because of mutual error or mistake the policy fails to reflect the intent of the parties, MFA Life Insurance Company v. Huey, 347 So.2d 63 (La.App. 2nd Cir. 1977), the evidence adduced *815 at trial fails to disclose mutual error or mistake between Petty and Southeastern or its agent, Mid-South.[3] Although Petty intended to acquire liability insurance covering his entire tractor-trailer combination, the record clearly reflects that neither Mid-South nor Southeastern intended to issue such a policy. Mid-South was never informed of the fact that the 1969 Frost trailer was attached to Petty's 1966 International truck, or that it would be necessary for some sort of trailer to be utilized with the truck in order to haul logs. Both Southeastern policies were issued in response to the applications which were submitted by Middleton to Mid-South and provided only the coverage requested therein, i. e., coverage on a 1966 International log truck. The record clearly reveals that neither Southeastern nor its agent, Mid-South, intended to issue a policy covering Petty's 1969 Frost trailer.
Appellants next contend that Southeastern is now estopped from denying knowledge that a trailer was to be used with Petty's truck because of a $15.00 "investigation charge" which was collected by Mid-South in connection with the issuance of the policies. The trial judge, in rejecting this contention, stated in written reasons:
"Counsel's argument relative to the $15 inspection fee charged by the broker for Southeastern is also not persuasive. It was shown that this fee is charged for various things such as credit inquiry, the physical preparation and issuance of the policy, and the like. Mr. Reid testified, moreover, that no physical inspection was made which would have placed Southeastern or its broker, Mid-South, on notice of the inherent necessity of the use of a trailer."
Evidence adduced at trial amply supports the trial judge's conclusions in regard to this matter.
Appellants finally contend that the trial court erred in rendering judgment in favor of Petty because of the negligent failure of Middleton to secure the desired coverage.
Our careful review of the record discloses no manifest error in the trial judge's factual finding that Middleton had been sufficiently informed of the circumstances surrounding Petty's intended logging operations. The record reflects that the 1966 truck and 1969 trailer were considered to be two separate vehicles, and that it was the customary practice, in making application to a surplus line company, to designate both the tractor-truck and the trailer. It is well settled that an insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the desired insurance, and to notify the client if he is unable to do so. Karam v. St. Paul Fire & Marine Insurance Company, 281 So.2d 728 (La.1973); Arceneaux v. Bellard, 149 So.2d 444 (La.App. 3rd Cir. 1963, writ refused).
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellants' cost.
AFFIRMED.
NOTES
[1] At trial, the pleadings were orally amended to reflect that this is the correct name of the Middleton agency.
[2] The extent of this attachment is not fully revealed by the record. However, it does appear that considerable effort would be required to remove the trailer from the tractor-truck.
[3] Our resolution of this issue renders it unnecessary' for us to consider appellees' contention that Middleton and California Union do not have standing to seek reformation of the Southeastern policy.