383 So.2d 1072 (1980)
Elwood TRAHAN, Plaintiff-Appellee,
v.
BAILEY'S EQUIPMENT RENTALS, INC. et al., Defendant-Appellant.
No. 7492.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1980.
Rehearing Denied June 2, 1980.
*1074 Onebane, Donahoe, Bernard, Torian, Diaz, McNamara & Abell, Edward C. Abell, Jr., Lafayette, for defendant-appellant-appellee Mid-South.
Seale, Smith & Phelps, James H. Morgan, III, Baton Rouge, for defendant-appellant-appellee E. N. O. Carrier.
Roy & Forrest, L. Albert Forrest, New Iberia, for defendant-appellee Southeastern Ins. Co.
McBride & Brewster, Norman P. Foret, Domengeaux & Wright, Jack C. Fruge, Jr., Davidson, Meaux, Sonnier & Roy, L. Lane Roy and Richard C. Meaux, Lafayette, for defendant-appellee.
Cline, Miller, Richard & Miller, Larry Richard, Rayne, for plaintiff-appellee.
Before SWIFT, STOKER and LABORDE, JJ.
SWIFT, Judge.
This case and Bailey's Equipment Rentals, Inc. v. Southeastern Fidelity Insurance Company et al., 383 So.2d 1078, have been consolidated for trial and appeal and both will be covered in this opinion. However, separate decrees will be rendered.
The suits arose from a collision which occurred on November 13, 1975, at or near the T-intersection of U.S. Highway 90 and Louisiana Highway 91 in Estherwood, Louisiana. William Leary, Sr., while driving a truck owned by and in the employ of Bailey's Equipment Rentals, Inc. (Bailey's Equipment), struck the rear of a gooseneck trailer attached to the bed of a pick-up truck owned and operated by Manson Saltzman in which Elwood Trahan was a passenger.
Mr. Trahan brought suit seeking damages for personal injuries sustained in the accident. The other suit was filed by Bailey's Equipment for recovery of its own property damages, the sums which it had paid to Saltzman for his collision losses and attorney's fees. The cases were submitted to a jury solely on the issues concerning liability, the parties having stipulated as to the amounts of the damages involved. The jury found Leary guilty of negligence and Saltzman free thereof. Additionally, it held Mid-South Underwriters, Inc. (Mid-South) and The Insurance House, Inc. (Insurance House) guilty of negligence in regard to the issuance of an insurance policy of Southeastern Fidelity Insurance Company (Southeastern Fidelity) to Bailey's Equipment. From adverse judgments in favor of Mr. Trahan, Bailey's Equipment, Southeastern Fidelity and State Farm Mutual Automobile Insurance Company, Mr. Saltzman's insurer, Mid-South, Insurance House and the latter's errors and omissions insurer, Employers Reinsurance Corporation (Employers Reinsurance), have appealed. Bailey's Equipment has answered the appeals seeking an increase in its award for attorney's fees.
On the day of the accident Saltzman and Trahan were proceeding east on Highway 90 in preparation for a left turn onto Highway 91. The trailer lights were connected with the pick-up by means of a plug assembly located on the left side wall of the truck bed. According to Mr. Saltzman, before leaving home he hooked up these brake lights and tested them to see that they were working by having his wife sit in the cab of the pick-up and push on the brakes while he observed the lights.
The accident occurred as the Saltzman truck and trailer were slowing to a stop in the eastbound lane of Highway 90 in order to make the left turn. According to Leary, no left turn signal was given by Saltzman and there were no brake lights showing on *1075 the trailer as he approached from the west. On the other hand, Saltzman testified that he not only used his left turn signal, but he also gave a hand signal.
The record further reveals that Mr. Leary had been drinking intoxicants the evening before the accident until about two o'clock in the morning shortly before he left Lafayette for Lake Charles. He had had no food, coffee, or sleep after he left home about 8:30 p. m. on November 12, 1975. Howard Nugent, the chief of police for the Town of Estherwood, who investigated the accident, testified he smelled liquor on Leary's breath and that he was not acting normal. He also said that Leary told him he had had no sleep at all that night and with the sun in his face, he "kind of fell asleep" and did not see the truck and trailer.
From our review of the record, we are in complete accord with the jury's conclusions that this accident was caused by Mr. Leary's negligent operation of his truck and that Mr. Saltzman was free from fault. We also agree with the trial judge's ruling on a motion for a directed verdict that Mr. Trahan was not contributorily negligent. Consequently, the plaintiffs in both suits are entitled to recover their damages.
The remaining issues in the case revolve around the question of whether Bailey's Equipment was insured by Southeastern Fidelity in regard to the damages sustained in this accident, or whether an exclusionary provision contained in the policy eliminated such coverage. If this exclusion is applicable, then we must determine whether the jury was correct in finding that Insurance House, Bailey's Equipment's insurance agent, and Mid-South, the brokerage house which placed the insurance with Southeastern Fidelity, were responsible for the failure of such policy to cover this risk.
In September of 1975, because of the imminent bankruptcy of Medallion Insurance Company (Medallion) which then insured his company, Mr. Bailey asked his agent, Mr. Daniel Blum, the President of the Insurance House, to find another insurance company to cover the same risks. Blum instructed his employee, Marcie Brown, who had been employed only three weeks, to obtain from several insurance brokers quotations as to the amount of the premium for such coverage. This was the first time Mrs. Brown had ever requested a quote on a commercial policy of this sort. She did this and coverage was ultimately ordered through Mid-South. It furnished a policy by Southeastern Fidelity which was based on the information received from Insurance House in connection with the prior quotation. This policy was sent to the Insurance House in late October, 1975. Mr. Blum reviewed it, but did not notice that the policy contained an endorsement limiting coverage to trips by the insured vehicles within a radius of 50 miles from the named insured's address. He did not furnish Mr. Bailey with the policy and, of course, did not advise him of the endorsement. Bailey had not seen the policy when the accident occurred on November 13, 1975.
Upon being notified of this accident, Southeastern Fidelity denied coverage on the basis of the limitation of use endorsement in the policy, which provides, inter alia:
"In consideration of the premium charged, it is agreed that the described vehicle(s) will be operated and used entirely within a radius of 0-50 miles from the address of the named insured as designated in Item One of the policy declarations; and it is expressly agreed that no coverage is provided under this policy while the insured vehicle is proceeding to or returning from a point beyond 50 miles from the address of the named insured as designated in Item One of the policy declarations regardless of where the described automobile may be involved in any accident."
Item One of the declarations designates only the Lafayette address for Bailey's Equipment, although the company vehicles are based in both Morgan City and Lafayette. Thus, coverage in this accident was clearly excluded by the provisions of this endorsement as Mr. Leary was returning *1076 from a point beyond 50 miles from Lafayette.
Negligence of the Insurance House
The law is well settled that an insurance agent, who undertakes to procure insurance for another, owes an obligation to his client to use reasonable diligence in attempting to place the requested insurance and to notify the client promptly if he is unable to do so. The client can recover from the agent the loss he sustains as a result of the failure to procure such coverage if the agent's conduct warrants the assumption by the client that he is so covered. Stacy v. Petty, 362 So.2d 810 (La.App. 3 Cir. 1978); Karam v. St. Paul Fire & Marine Insurance Company, 281 So.2d 728 (La.1973).
The evidence clearly reflects that Mr. Daniel Blum, an experienced insurance agent, knew that Mr. Bailey desired full coverage and could not have an endorsement of this kind on the policy, because he was aware that Bailey's business extended statewide and on some occasions beyond the borders of Louisiana. Regardless of the information hereinafter mentioned which was exchanged between his employee, Marcie Brown, and Mid-South in obtaining the policy, Blum admitted that he overlooked the limitation of use endorsement when the policy was received in his office and failed to inform Bailey thereof. Further, it is evident that Mr. Bailey relied on Mr. Blum's assurances his company was fully covered as it had been by Medallion.
The trial jury found that the Insurance House was at fault, obviously in failing to obtain the proper coverage and not advising the insured of the limitation of use endorsement. It also concluded that such negligence was a cause of the damages claimed by Bailey's Equipment in these suits. We fully agree with its findings and conclusions in this regard.
Negligence of Mid-South
Similarly, the jury found that Mid-South was also guilty of negligence which was a contributing cause of the failure to obtain a policy providing proper coverage of the claims asserted here in by Bailey's Equipment.
There are some discrepancies as to just what was said by Mrs. Brown and Mr. Dale Reid of Mid-South when the premium quotation was obtained. However, Reid testified that Brown informed him three of the vehicles were based in Morgan City and balance were in Lafayette. He said he knew that the distance between Morgan City and Lafayette was over 70 miles. Thus, Reid knew that the policy he was about to obtain from Southeastern Fidelity would not even cover the Bailey vehicles when transporting oil field equipment between the company's own two bases. Clearly, this was not the type of coverage which the insured proposed to purchase for its oil field business. Nevertheless, Reid did not ask for the Morgan City address for possible insertion in Item One of the policy, nor did he explain to Brown that a mileage use limitation was to be a part of the policy.
Mr. Reid said he assumed Mrs. Brown knew the policy would contain such an endorsement when he asked her about the radius of operations and she responded "local", because in the insurance industry that meant the vehicles would be used within a 50 mile radius. However, Reid acknowledged that such use information is obtained in connection with some policies simply to determine the amount of the premium, without limiting the coverage in any way.
Mrs. Brown denied that she was ever asked by or told anyone at Mid-South that the insured's trucks were to be used only locally or that the policy would contain a limitation of use endorsement. Furthermore, she sent Mid-South a copy of the terminating Medallion policy (which contained no such limitation) for use in preparing the replacement policy of Southeastern Fidelity.
The jury apparently accepted Mrs. Brown's testimony as being correct and we certainly cannot say it was clearly wrong in this respect.
*1077 Generally, the question of whether an insurance broker in any particular transaction is acting as the agent of the insured or the insurer is one of fact dependent on the particular circumstances of the case. But the general rule is to the effect that an insurance broker is the agent of the insured and not of the insurer. In Karam v. St. Paul Fire & Marine Insurance Co., 265 So.2d 821 (La.App. 3 Cir. 1972), affirmed in part on other grounds, supra, this court said:
"There is a distinction between insurance agents who are employed by an insurance company to solicit risks and effect insurance for that company, and insurance brokers, who solicit insurance from the public generally, under no employment from any special company, placing the insurance with any company selected by the insured or, failing such selection, by the broker himself. In the absence of special circumstances, an insurance broker generally is considered to be the agent of the insured in procuring a policy of insurance. Foster v. Nunmaker Discount Company, 201 So.2d 215 (La. App. 4 Cir. 1967); Security Transfer Company v. Insured Lloyds Company, 225 So.2d 284 (La.App. 4 Cir. 1969); Blashfield, Cyclopedia of Automobile Law and Practice, Sec. 3491; Appleman, Insurance Law and Practice, Sec. 8726; Couch on Insurance 2d, Sec. 25:99-25:101."
Under the circumstances of this case, we believe that Mid-South, as well as the Insurance House, was acting as Bailey's Equipment's agent to procure the replacement policy of insurance from Southeastern Fidelity and as such owed a duty to the insured to use reasonable diligence in attempting to place the insurance requested. The record reveals ample support for the jury's conclusion that Mid-South breached this duty. Consequently, it is liable in solido with Insurance House (and its liability insurer) to Bailey's Equipment.
Reformation of the Southeastern Policy
Mid-South asserts that, in the event it is held jointly negligent with the Insurance House, the policy with Southeastern should be reformed to eliminate the mileage use endorsement.
Our jurisprudence recognizes that in certain instances of mistake, error or even negligence on the part of an agent or employee of an insurer, a policy erroneously issued will be reformed to conform with and reflect the true intent of the parties. Billiot v. Sentry Ins., 366 So.2d 1017, (La. App. 1 Cir. 1978) writ denied, 368 So.2d 125 (La.1979).
Mr. Bailey testified that in his business operations, which he discussed with Mr. Blum, he had occasion to dispatch his vehicles to various places within and even out of the state. It is clear that any limitation of use endorsement would be unthinkable from his standpoint. Conversely, Mid-South's Mr. Reid testified that had he known that Bailey's operations covered the entire state and beyond he would have declined to submit any quote whatsoever on the requested coverage as Southeastern Fidelity, a surplus line insurer, would not have issued a policy without some limitation of use endorsement. Although the insured intended to acquire full liability coverage of its trucks, neither Mid-South nor Southeastern Fidelity ever intended to issue such a policy. Therefore, the policy cannot be reformed to include unlimited coverage under the guise of making it conform to the true intent of the contracting parties because there never was any such understanding between them. Stacy v. Petty, supra.
Counsel for the Insurance House and Employers Reinsurance further asserts that such a mileage use limitation is against public policy and therefore void, citing a New York case, Kasson and Keller, Inc. v. Centennial Insurance Company, 359 N.Y. S.2d 760, 79 Misc.2d 450 (N.Y.Sup.Ct.1974), and Article 1, Section 8, Clause 3, of the United States Constitution (the interstate commerce clause).
In that case the court found that the exclusion limiting coverage was not one authorized by the Rules and Regulations of the superintendent of Insurance of New *1078 York. We do not find that such an endorsement conflicts with any law, regulation or policy of this state. Nor was it shown that the endorsement involved in this case imposed any undue burden on interstate commerce. It was not established that Bailey's Equipment could not have purchased more extended coverage had it been willing to pay the premium therefor and the matter had been handled properly.
COURT COSTS
The Insurance House and its insurer contend that the judgments are unclear in regard to court costs as they appear to cast them and Mid-South each for one-third thereof.
Although these defendants are solidarily liable to the plaintiffs for the costs, as between themselves Insurance House and its errors and omissions insurer, Employers Reinsurance, are only liable for one-half and Mid-South is obliged to pay the other one-half thereof. The judgments will be amended accordingly.
ATTORNEY'S FEES
Finally, Bailey's Equipment has answered this appeal, requesting additional attorneys fees for services rendered in connection therewith. The parties agreed at the hearing in this court that an additional award of $750.00 is appropriate.
For the above and foregoing reasons, the judgments of the trial court are amended to provide that as between the defendants assessed with court costs they are to be paid one-half by Mid-South Underwriters, Inc. and one-half by The Insurance House, Inc. and its insurer, Employers Reinsurance Corporation; and also to award an additional $750.00 to Bailey's Equipment Rentals, Inc. as attorney's fees. The court costs and attorney's fees are to be divided equally between the two cases. Otherwise, the judgments are affirmed. The costs of this appeal are to be paid in the same manner.
AFFIRMED AS AMENDED.